## Case No. 1,683.

BOSWELL v. DICKERSON et al.

[4 McLean, 262.][1]

Circuit Court, D. Ohio. July Term, 1847.[2]

STATUTES—CONSTRUCTION — DEROGATION OF COMMON LAW—EJECTMENT—PROCEEDINGS IN—PROPERTY AFFECTED—NOTICE—PUBLICATION.

1. A statutory proceeding, which is not according to the course of the common law, must be strictly pursued.

2. A proceeding in rem, can only affect the property attached or named in the bill.

3. By a statute of Ohio, a proceeding in chancery against a non-resident is authorized, by publishing notice, where the title or boundaries of land is in question, or to compel a specific execution of such a contract, or the rescission of a contract for the conveyance of land. This, at most, can only affect land against which the proceeding is instituted, by being named in the bill. Any proceeding against land, not so named, will be void.

[Cited in Nations v. Johnson, 24 How. (65 U. S.) 203; Baldwin v. Hale, 1 Wall. (68 U. S.) 233; Galpin v. Page, Case No. 5,205; Ray v. Norseworthy, 23 Wall. (90 U. S.) 128.]

4. So far as regards such property, the owner can have neither actual nor constructive notice.

[Cited in The Globe, Case No. 5,483.]

5. A decree for money on such a bill, if such decree be within the power of the court, can not be made to affect the property of the defendant generally, or render it liable for the satisfaction of the decree.

[See Warren Manuf'g Co. v. Etna Ins. Co., Case No. 17,206; Lincoln v. Tower, Id. 8,355; Westerwelt v. Lewis, Id. 17,446; Thompson v. Emmert, Id. 13,953.]

[Action of ejectment by the lessee of Thomas E. Boswell against Rodolphus Dickinson and others. The judges were divided in opinion, and the case was certified to the supreme court. See note at end of case.]

Ewing & Wilson, for plaintiff.
Mr. Lane, for defendant.

OPINION OF THE COURT. This is an action of ejectment, brought to recover lot No. 7, in the United States reservation, at Lower Sandusky, in this state. A patent from the United States, dated 2nd September, 1831, to the lessor of the plaintiff, which includes the premises in controversy, was given in evidence. The defendants were admitted to be in possession. The defendants, to show title in themselves, offered in evidence the record of a decree in 1826, of chancery, in the common pleas of Sandusky county, on which three executions were issued, the last one being dated in November, 1831, was levied on the lot in controversy, and sold, and the sheriff's deed to the purchaser was dated the 19th of May, 1832. This record was objected to on the ground, that it was a proceeding against non-residents of the state, and the decree was in personam

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Certified to supreme court on division of opinion. See note at end of case.]

for the payment of a sum of money, which decree was to have the effect of a judgment, and on which an execution was authorized against the lands of the defendants; though they had received no personal notice, and that consequently the decree was void. To this objection it was replied, that in the case of Boswell v. Sharp, 15 Ohio, 447, in which that court held that the court of common pleas of Sandusky, had jurisdiction in the chancery proceedings, and that the validity of that proceeding could not be questioned collaterally.

It appears that in 1816, Boswell, of the state of Kentucky, Reed, Owings and Hawkins, agreed to build a saw-mill on the public land in Sandusky, with the view of purchasing the land when it should be sold by the government. Boswell, Reed and Owings, were partners in the saw-mill, and were to pay the expenses. At the public sales, lot No. 9, in the Sandusky reservation, or a large part of it, was purchased by the above persons. Hawkins was to have one-fourth of the interest of the saw-mill, was to be the active partner, and superintendent of the building, and his share to be paid by labor. At the public sale, Boswell and Owings advanced a part of the money. But it seems, at Wooster, in Ohio, where the sales took place, Reed and Owings abandoned the contract; and it was then agreed between Boswell, Barry, of Kentucky, Whittimore, of Boston, and Hawkins, to purchase lot No. 9, on which the building of the mill had been commenced. It was so purchased, and it was also agreed that Hawkins's share of the expense should be paid in labor on the mill, and in improvements on the land. The above facts were substantially represented by Hawkins in his bill, and that in the construction of the mill, he expended five thousand dollars, of which he advanced two thousand six hundred dollars, besides his own time; that Boswell, Barry and Whittimore, against whom the bill was filed, have failed to convey to him one-fourth of the premises under the contract, or any part of them, they having acquired a title to two-thirds; nor have they accounted to him for the moneys he expended. And the complainant prays a decree for one-fourth part of the land, for which the defendants have a title, and also that they may account, etc.

Under the chancery act of 1824 [22 Ohio Laws, 78], this bill was filed in the common pleas. By the 12th section of that act, jurisdiction is given over the rights of absent defendants, on the publication of notice, "in all cases properly cognizable by courts of equity, where either the title to, or boundaries of land may come in question, or where a suit in chancery becomes necessary, in order to obtain the rescission of a contract for the conveyance of land, or to compel the specific execution of such contract." That the jurisdiction assumed under this statute is limited, will not be contro-

verted. It is strictly a proceeding in rem. And it is only authorized in three cases. 1. Where the title or boundaries of land comes in question. This does not apply to the proceeding under consideration. 2. The rescission of a contract for the conveyance of land; or, 3. To compel a specific execution of such contract. There is no pretense that the bill could be sustained under the second ground. No rescission of a contract was asked. It was for the specific execution of the contract stated by Hawkins in his bill, that the bill was filed, and it is only upon that ground that it can be sustained, if indeed, it be sustainable. Jurisdiction can only be acquired in two modes—one in personam, the other against the property. And it is immaterial whether the proceeding against the property be by attachment or in chancery, it is limited to the thing attached by the writ, or specified in the bill. The argument that jurisdiction being acquired in chancery for one purpose, may be exercised over all matters in controversy, relating to the same subject, between the parties, need scarcely be answered. The doctrine is a doctrine of chancery, but it can have no application in the present case. No man's rights can be affected without notice, actual or constructive. The statute under which these proceedings were had, required notice, and had not this notice been strictly given, the whole proceedings would have been a nullity. Whether it was given or not, is not important, in regard to the question now before us, to examine. The right to lot No. 7, is the only right before us, and in looking into the bill it will not be found that it refers to that lot, or gives notice to any one of a procedure against it. The title then under the decree must stand upon that part of it which ordered the payment of money, on which an execution was issued, and by virtue of which lot No. 7 was sold. It is true the court in their decree, declared that all the lands in the county should be subject to be levied on by execution, to satisfy the decree. But what power had the court to make this order? How did they acquire jurisdiction over the lot? There was no proceeding against it. Its owners could have had no constructive notice that it was to be made liable for the decree. Chancery may decree the payment of money in many cases, and it may direct an execution to issue the same as on a judgment at law. But that is in a case where the court has jurisdiction over the person. Surely a precedent can scarcely be found where this has been done, where there is no pretense of notice, actual or constructive; and yet that is the case, as regards lot No. 7, now before us. The procedure of the court of common pleas, so far as relates to this lot, is void. They acquired no jurisdiction over it, and consequently, the sheriff's deed conveyed no title.

The decision of the supreme court of Ohio, does not stand in the way of this view. The supreme courts of the states fix the construction of the statutes of the states, and the courts of the United States will follow the established construction. But the decision named is not one of the character alluded to. It does not establish the construction of the statute. The question as to this procedure came collaterally before the supreme court of the state, and in that form only has the question been considered by that court. And that can not be called the construction of the statute. The court held, in the manner in which the record came before it, the decree could not be treated as a nullity. There was no judgment given, that a part of the proceedings were not void. But suppose the supreme court had decided that the property of an individual, under the statute, without notice actual or constructive, was liable to be sold, I should have felt bound to hold the decision as void. The legislature required notice. But should the legislature assume the power to dispose of the property of non-residents without notice, would their act be regarded? Such a procedure would be opposed to the immutable principles of justice. And under the doctrine of the supreme court of the Union, the law would be held void. Fletcher v. Peck [6 Cranch (10 U. S.) 87].

NOTE [from original report]. As the views of the court seemed to excite surprise in the counsel for the defense, and as the question was important, it was suggested by the court, and assented to by plaintiff's counsel, that a division of the judges, pro forma, on certain points, should be certified to the supreme court, as that was the only form in which the case could be taken before that tribunal. The points certified, were—1. "Whether or not the proceedings and decree of the said court of common pleas of Sandusky county, set forth in the record above stated, are coram non judice?" 2. "Admitting said proceedings and decree to be valid, so far as relates to the land specifically described in the said bill in chancery, whether or not said proceedings and decree are coram non judice and void, as relates to lot number seven, in controversy in this case, and which is not described in said bill in chancery; or in other words, whether said proceedings and decree are not in rem, and so void, and without effect as to other lands sold under said decree."
The answer of the supreme court was, "that the proceedings and decree of the court of common pleas of Sandusky county. as set forth in the record, are coram non judice and void, as relates to lot number seven." The other point was not answered. [Boswell v. Otis, 9 How. (50 U. S.) 336.]