## No. 5964.

### JAMES M. STEWART *v.* P. H. ANDERSON ET AL.

1. JURISDICTION.—Whether the jurisdiction of a court be general or special it can not be made to depend upon the character of the process through which it acquires power over the person or thing to be affected by its final adjudication. The same presumption must be indulged in favor of jurisdiction, whether service be had personally or by publication.

2. SAME.—Whenever it appears from an inspection of the record of a court of general jurisdiction that the defendant against whom a personal decree or judgment has been rendered was at the time of the alleged service without the territorial limits of the court, and that he never appeared in the action, the presumption of jurisdiction over the person ceases, and the burden of establishing the jurisdiction is cast upon the party who claims the benefit or protection of the judgment or decree. The presumption regarding the attaching of jurisdiction exists when the defendant is shown by the record to have been within the jurisdiction of the court.

3. SAME.—Under the statute as it existed in 1867, before the property of a non-resident could be seized and sold under attachment, it was necessary that the attachment should have been levied on property within this State, and that the service required by law to be given by publication should have been given before the court could acquire jurisdiction to enter a judgment directing the property seized to be sold for the payment of a debt.

4. CASE REVIEWED.—Wilson v. Zeigler, 44 Texas, 657, reviewed.

5. NOTICE.—The statute does not contemplate that the seizure of the property of a non-resident by attachment, in a suit by publication, is notice; the notice must be given either by personal service or by publication, and when by publication it will not authorize as against a defendant not personally served, and who makes no appearance, a judgment on a new cause of action set up by way of amendment, and of which no notice was given by publication. The giving of notice in the manner pointed out by the statutes is necessary to clothe a court with power to hear and determine the pending cause if there be no appearance. Unless this notice is legally given no court has power or jurisdiction to order a sale of the defendant's property though *in custodia legis* by virtue of its seizure under a valid attachment.

6. JURISDICTION.—The word *jurisdiction*, when its meaning is involved in an inquiry as to whether the judgment of a court is void or voidable

.   can have but one meaning, and that is the lawful power to hear and determine the matter in controversy. If this power did not exist, and its absence is shown from the record, the judgment rendered in the attempt to exercise jurisdiction, is void.

**7.** CASES REVIEWED.—McRea v. Brown, 45 Texas, 507; Morrison v. Walker, 22 Texas, 20; Rowley v. Borrian, 12 Illinois, 199, reviewed.

**8.** If an attaching creditor after setting up one cause of action and suing out an attachment upon it, so amend his petition as to set up a new and independent cause of action and thereon takes one judgment, this dissolves the attachment as to subsequent attaching creditors and purchasers.

**9.** JURISDICTION—JUDGMENT.—If a defendant is not brought before the court by process which confers jurisdiction over his person, and does not voluntarily appear, no judgment can be rendered that will bind him personally in an ordinary action of debt when based on the mere fact that he has property within the reach of the process of the court.

**10.** ATTACHMENT.—If an attachment lien is lost by dissolution of the attachment the power of the court to render a judgment is lost, unless it has acquired jurisdiction over the person of the defendant.

**11.** JUDGMENT.—A judgment rendered on a demand set up by way of amendment in a proceeding by attachment where service is attempted by publication as to the original cause of action but not as to the amendment, there being no appearance by the defendant or personal service on him, is a nullity.

APPEAL from Falls. Tried below before the Hon. Eugene Williams.

*Goodrich & Clarkson,* for appellants: In order to acquire the jurisdiction of the court, that has not acquired it by some personal service or appearance, there must be duly issued and legally executed both citation by publication and writ of attachment. These both must concur. And the jurisdiction, then, is only over the property actually brought within the control of the court by the levy. (Nichols v. Wunmer, Texas Law Review, reported December, 1884; Pennoyer v. Neff, 95 U. S., 814; Cooper v. Reynolds, 10 Wall., 308; St. Clair v. Cox, 106 U. S., 350; Brooklyn v. Ins. Company, 101 U. S., 88; Pas. Dig., art. 156; Waples on Attachment, 304 et seq., 718, 319, 320, 339, 340; Warner v. Webster, 13 Ohio, 506; Stegall v. Huff, 54 Texas, 193.

All of the statutory prerequisites are jurisdictional, and they are not presumed. (Herrington v. Williams, 31 Texas, 457;

Waples on Attachment, 301, 302, 303, 304, 305, 306, 307, 308, 309, 340, and the authorities there cited; Anderson v. Corburn, 27 Wis., 558; King v. Herrington, 14 Mich., 532; Thompson v. Thomas, 11 Mich., 274; Millard v. Babcock, 29 Mich., 516; Boswell v. Otis, 9 How., 346, 350.)

If it appears by the record that the defendant is without the territorial jurisdiction of the court, and that the judgment rests alone on service by publication and attachment, all material directions of the statute must be followed. (Waples on Attachment, 330, 331, 332, 333; Freeman on Judgments, sec. 127; Harris v. Hardeman, 14 How., 337; Hollingsworth v. Barber, 4 Peters, 467; Dean v. Nelson, 19 Wall., 170; Hallett v. Righters, 13 How., 43; Boyland v. Boyland, 18 Ill., 552; Brownfield v. Dyer, 7 Bush, 505; McCoy v. Crawford, 9 Texas, 354; Collins v. Miller, 64 Texas, 119; Stephens v. Stephens, Texas Law Rep., Deecmber 2, 1884; Waples on Attachment, pp. 321, 322, 323, 324, 325.)

*West & McGown,* for appellee.

STAYTON, CHIEF JUSTICE.  This is an action of trespass to try title, instituted by appellants.  James Humphries is common source of title, and through him the appellants claim by direct conveyances.  The appellants claim through a judgment against Humphries, upon the validity of which depends their title.

On January 28, 1867, Joseph Harrell brought an action against James Humphries in the district court of Travis county, on a note for one hundred and sixty dollars.  The petition alleged that Humphries was not a resident of this State, but that he had property in the county of Falls, and also an unlocated balance of a land certificate described, which was alleged to be then on file in the general land office.  It prayed that attachments issue to Falls county to be levied on property there situated, and that another issue to Travis county to be levied on the balance of the unlocated certificate then on file in the general land office, and for citation by publication.  The necessary steps were taken to authorize the writs for publication and attachment to issue, and they were issued.  That issued to Travis county has on it the following return:

"Received same day issued [January 29, 1867] and executed same day by attaching the within named unlocated balance of land certificate No. 186.

> GEO. B. ZIMPELMAN, Sheriff."

The land in controversy was patented under so much of that certificate as is claimed to have been unlocated at the time the attachment was levied; but there is a controversy whether that part of the certificate had not been applied to the land in controversy at the time the attachment was levied. How the levy was made is not further shown than appears by the return of the sheriff.

The attachment issued to Falls county was levied on other land in part located by virtue of the same land certificate. Writ for citation by publication issued on the day the petition was filed, and the only return indorsed on it is as follows:

"Came to hand same day issued and ordered the foregoing citation to be published in the Southern Intelligencer for four successive weeks prior to return day hereof, January 28, 1867.

> G. B. ZIMPELMAN, Sheriff T. C."

Accompanying the citation and return, however, was a copy of the citation as published in the paper named in the return and the printer's receipt, of date January 31, 1867, for eighteen dollars and seventy-five cents, printer's fee for publication.

On April 15, 1869, another petition, styled an amended petition, was filed, in which the plaintiff set up a new cause of action, based on a note for four hundred dollars, of which Harrell alleged he was the owner. This petition sought a recovery on the note set up in it, and contained no prayer for citation nor averment of any fact that would have authorized citation by publication; but it contained a prayer as follows: "Petitioner prays that on the trial of this cause that he be given a judgment for the full amount of said note, principal and interest, up to the date of the rendition of said judgment. Petitioner further prays that he be allowed all the means and the benefit of all the writs which is prayed for in said original petition, and that one judgment embrace the amounts due on both notes." On the same day the amended petition was filed

a judgment was rendered in favor of Harrell for the entire sum then due on both notes, which directed the attached property to be sold for its satisfaction.

The recital in the judgment as to service of citation and as to the non appearance of Humphries was as follows: "Now comes the plaintiff in the above styled cause, by his attorney, and announced ready for trial, and the defendant, although he was duly called, came not, and it appearing to the satisfaction of the court that the said defendant, James Humphries, has been duly cited by publication, in the manner prescribed by law," etc. The judgment further stated that it appeared to the satisfaction of the court that the attachments before referred to had been legally levied upon lands which the judgment described, and upon the unlocated balance of the land certificate which it described generally, without giving the extent to which it was unlocated, and declared that it was then on file in the general land office of the State of Texas.

The appellees claim under the judgment thus rendered.

The court's conclusion of law, from the facts above stated, as to the jurisdiction of the district court for Travis county to render the judgment against Humphries, was: "That all questions as to the jurisdiction of the district court of Travis county, in the case of Harrell v. Humphries, are concluded by the recital of service of citation by publication, and levy of said attachment appearing in said judgment and recital aforesaid, and now it must be and is conclusively presumed that the jurisdiction of said court in said case had attached, and said court had full power and authority to adjudge against said defendant the sum of one thousand and thirty dollars and fifty-five cents and costs, and to subject said property described in said writs of attachment, returns and judgment to its payment." The court below found, as fact, that there never was any personal service on Humphries, nor any other service of citation or attachment than as appears from the statement above made.

Joseph Harrell was a resident of Texas. The title of the appellees being the elder must prevail if the judgment through which they claim be not void.

There has been much difference of opinion in courts for whose decisions we have the highest respect, as to whether the same presumptions will be indulged in favor of jurisdiction when reliance is placed on citation by publication and seizure

of property, as will be when personal service made within the territory over which the court has jurisdiction is relied upon. It seems to us that there can be no substantial reason for holding in the one case that it must be affirmatively shown that such process as the law declares sufficient was properly executed, while in the other this will be presumed if the record does not show to the contrary. Whether the jurisdiction of a court be general or special, it can not be made to depend upon the character of the process through which it acquires power over the person or thing to be affected by its final adjudication.

The Constitution confers jurisdiction, but the Legislature prescribes the process through which persons and things may be brought within its reach and made subject to its exercise.

It seems to us illogical to hold, when the averments of the pleadings show that personal service might have been made within the jurisdiction, that this will be presumed to have been done if the record be silent, or do not show to the contrary, where the court has exercised or assumed to exercise the power to make a final judgment, but to hold that the same presumption will not be indulged as to the proper citation by publication, or as to the seizure of property where the pleadings show that these things were necessary to be done, and could have been done, before the court assumed the power to render a final judgment. In either case, the presumption that the court did not render a final judgment until it was authorized to do so, arises from the fact that to have done otherwise would have been a breach of duty which is never presumed from the doing of an act that may have been legal.

If "it appears from the inspection of the record of a court of general jurisdiction that the defendant against whom a personal decree or judgment is rendered was at the time of the service without the territorial limits of the court, and thus beyond the reach of its process, and that he never appeared in the action, the presumtion of jurisdiction *over his person* ceases, and the burden of establishing the jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree." (Galpin v. Page, 18 Wall, 364.)

If, however, the record shows that the defendant was a resident of the territory of the State within which such a court sits, its process could be served upon him personally, and it ought to be presumed in such a case, nothing appearing in the

record to show to the contrary, that personal service was made before the court entered a final decree or judgment.

In the case before us it appears that James Humphries was not a resident of Texas at the time Harrell instituted the original action against him, and it further appears that proper steps were taken to entitle the latter to have citation by publication. The return on the citation, however, does not show that it was executed as the law requires, but the judgment declares that it appeared to the court that he had been cited by publication in the manner prescribed by law.

If the district court, after Harrell filed the amendment setting up a new cause of action, had jurisdiction to have rendered a judgment on the cause of action first asserted or on the cause of action as it stood after the amendment was filed, then the same presumption that citation by publication was duly made ought to be indulged in this cause that would be indulged in favor of personal service in a case in which the record showed a defective return on citation requiring personal service, but in which the judgment declared that the service was made as required by law. In like event, although the return on the writ of attachment did not show how it was executed, the court having declared that it "was legally and formally levied" on the land certificate described in the judgment, it ought to be held, in any collateral proceeding, that the writ was so executed as to give legal seizure; and it would be unnecessary now to inquire what steps would be requisite in attaching a land certificate situated as was that claimed to have been seized.

It is unnecessary, however, to enter into the consideration of the question whether the court, after the pleading filed on the day of the trial of the case of Harrell v. Humphries, had jurisdiction, changed as was the cause of action by that pleading, to have rendered a judgment on the cause of action set up by Harrell originally; for if it be conceded that it might have done so, and that the presumptions arising from the facts found in the record would be conclusive of the power of the court to render such a judgment, it ought not, and could not, influence the decision of this case.

The proceeding in the case of Harrell v. Humphries was essentially one *in rem* in its inception, and the record in that case negatives the existence of any fact which could have authorized a personal judgment against the latter on the cause of ac-

tion asserted in the original or amended pleadings, or upon both; and it further negatives the existence of facts which would have empowered the court to render any judgment on the cause of action set up in the pleading filed in that case, on the same day the court assumed to render a judgment on that cause of action as well as that set up in the original petition.

There was neither personal service on or appearance by Humphries, hence no personal judgment could legally have been rendered against him on either cause of action asserted. To have authorized the court to render a judgment subjecting his property to the payment of the debts asserted by Harrell, it was necessary that the procedure required by the laws of the State should have been had.

The law in force at the time the judgment in favor of Harrell was rendered authorized an attachment when a defendant was a non resident of the State, but before this could be obtained it was necessary that a plaintiff should file his petition and therein state a cause of action which entitled him to such process, to make an affidavit that the defendant was jointly indebted to him, the amount of the demand and to execute a bond in at least double the amount sworn to be due. The law further provided "that no judgment shall be rendered in suits by attachments, unless the citation or summons has been served in the ordinary mode, or by publication in the manner provided by law." (Pas. Dig., 156.)

It was necessary that an attachment should have been levied on property within this State, and that the notice required by law to be given by publication should have been given before the court could acquire jurisdiction to enter a judgment against Humphries, directing property seized to be sold for the payment of the debt due to Harrell, Humphries being a non resident and not appearing.

This we deem the settled law of the land, and, so far as we know, no case, in this State decided, asserts a different rule, though there are expressions in the case of Wilson v. Zeigler, 44 Texas, 657, which would lead to a different rule. These expressions, however, were not called for by the facts of the case. In that case notice was given to the non resident defendant by publication; he owned property in the State, appeared and made defense, and the question was, whether under these facts the court had jurisdiction to render a judgment against the non esident defendant without the seizure of property or further

citation. The district court held, not, and its judgment was reversed by this court. There could be no doubt of the correctness of the decision made, for the facts presented a case in which a resident plaintiff brought an action to recover a sum of money due him by a non resident defendant owning property here, who appeared and made defense without personal citation or seizure of property.

The law of this State providing that notice by publication shall be given, contemplates that this shall be given of the cause of action on which the judgment is to be rendered, and not that when notice is thus given that a plaintiff asserts one cause of action, a judgment may be rendered on another of which no notice is given. The laws of this State do not deem the seizure of property under a writ of attachment notice, for it requires personal service or notice by publication.

It is doubtless competent for the Legislature when personal service can not be made within the State on a defendant, to declare what shall constitute notice to a non-resident debtor having property within the limits of the State sought to be subjected by a creditor to the payment of his debt. When, however, the manner in which notice shall be given in such cases is thus prescribed, and the Legislature has declared "that *no judgment shall be rendered* in suits by attachment, unless the citation or summons has been served in the ordinary mode, or by publication in the manner prescribed for by law," we can not hold that the giving of notice is not necessary to clothe a court with power to hear and determine the pending cause, if there be no appearance; and, without this no court has the power to render a decree or judgment whereby a debtor's property may be sold and the proceeds applied to the creditor's demand, even though the property may be in the custody of the law under a seizure made through a valid writ of attachment.

There are cases holding to the contrary, and a distinguished elementary writer citing such cases says: "When, therefore, notice to the defendant is required, it is not an element of the jurisdiction of the court, but is necessary to authorize the court to exercise its jurisdiction by giving judgment in the cause." (Drake on Attachments, 437.)

This is the substance of the language used in some of the decisions holding that notice is not essential to the jurisdiction of a court in attachment cases, and that while judgments ren-

dered in such cases without such notice are voidable, they are not void. The word "jurisdiction" when used in an inquiry whether a judgment a court has assumed the power to render is void or voidable can have but one meaning, and means lawful power to hear and determine the matter in controversy.

If having this power a court renders an erroneous judgment it may be avoided by such proceeding as the law provides, but until avoided it is binding on the parties to the action. If the court have not such power, any judgment it may assume to render is necessarially void, and binds no person or thing.

Courts have no powers other than such as are conferred upon them by law, and the proposition that an exercise of power which the law forbids in the absence of facts made necessary by the law to the exercise and very existence of jurisdiction, is only voidable, can have basis on no other theory than that courts have an inherent power to hear and determine when the law denies or withholds it. The great difficulty in determining whether a judgment be void or only voidable most frequently arise from the presumptions indulged from the fact that a court of general jurisdiction has assumed to exercise the power to hear and determine, whereby inquiry is cut off except as to facts on which to make it are found in the record.

If, however, from the record, it appears that a fact necessary to confer on the court power to hear and determine a given cause did not exist, it is universally held that its judgment is void.

Every fact which the law declares shall exist before a court can lawfully hear and determine a cause, is necessarily a jurisdictional fact—an element of jurisdiction in the particular case. A denial of the power to render a judgment is necessarily a denial of the power to hear and determine.

The exercise or assumption of a power when a fact necessary to its existence is wanting, is usurpation.

In an attachment suit the debtor's property is seized and thus brought into the custody of the law, but if the debtor be within the reach of the ordinary process of the court, the law declares that he shall be brought into court, by service of such process, before a judgment can be rendered against him, or to subject his property to sale and its proceeds to the payment of his debt. If the record in such a case shows that there was neither service on such a defendant nor appearance by him, it would not be claimed that the judgment was not void, even

though it did nothing more than to subject the attached prop·
erty to its payment. In such a case it would be abmitted that
an element of jurisdiction prescribed by a positive law was
wanting.

What shall be an element of jurisdiction, except as this may
be controlled by constitutional safe guards, is to be determined
by the Legislature.

The same law which makes personal service an element of
jurisdiction in attachment suits as in all others, when this can
be had, and thereby, in effect, denies the sufficiency of the mere·
seizure and custody of the debtor's property to confer on a·
court the power to hear and determine a cause, declares, if
such service can not be had, that notice shall be given by pub--
lication before the court can hear and determine the cause.

The latter is as clearly an element of jurisdiction as is the
former.

The cause of action on which the judgment in favor of Har--
rell v. Humphries was rendered was one essentially different
from that asserted where the writ of attachment was levied
and when publication was made, and several cases have arisen
in which the necessity for further notice of the new cause of
action has been considered.

In the case of McRae v. Brown (45 Texas, 507), notice was·
given by publication, and after this a new cause of action was·
set up, on which judgment by default was rendered without
further notice. In disposing of the case, it was said: "This is·
evidently a different cause of action from that set up in the origi-
nal petition, and under such circumstances judgment by default·
can not be taken against the defendant, who has made no ap--
pearance, merely by reason of the service of the original
petition." (Morrison v. Walker, 22 Texas, 20; Erskine v. Wil-
son, 27 Texas, 118.) In Morrison v. Walker it appeared that,
after personal service was made on the defendants, a new
cause of action was set up by amendment, of which no notice·
was given by further citation, and in disposing of the case it
was said: "No decision of this court has gone to the extent of·
permitting a judgment by default, upon a moneyed demand,
set up for the first time by an amendment, of which the party
to be charged had no notice.   *  *  *   But in all cases where a
demand for money upon a cause of action other than that set·
forth in the original petition, is made by an amendment, we·
are of opinion that there must be service of the amendment, or·

the record must disclose the fact that the party to be affected by the amendment was actually in court, in person or by attorney, and might have had notice of such amendment."

The same ruling was made in the following cases: Weatherford v. Van Alstyne, 22 Texas, 22; DeWalt v. Snow, 25 Texas, 321; Furlow v. Miller, 30 Texas, 29; McNeil v. Childress, 34 Texas, 371; King v. Goodson, 42 Texas, 153; Pendleton v. Colville, 49 Texas, 526; Hutchinson v. Owen, 20 Texas, 287; Hewitt v. Thomas, 46 Texas, 234; Rabb v. Rogers, 67 Texas, 339.

In the case of Rowley v. Berrian (121 Ill., 199), it appears that an action was brought against a non resident to recover a named sum alleged to be due on a note, that a writ of attachment was prayed for, issued, and levied upon land, and that notice was given by publication which, as is required by the laws of this State, set forth the cause of action. A larger claim was subsequently set up, without any further notice to the defendant, who did not appear, and on this, as well as the claim originally asserted, a judgment was rendered in favor of the plaintiff.

In disposing of the case the court said: "The law requires the plaintiff to file an affidavit setting forth particularly the nature and amount of the indebtedness, and the advertisement to the defendant must apprise him of the amount claimed by the plaintiff, the writ of attachment commands the sheriff to attach so much of the estate of defendant as will be sufficient to satisfy the claim sworn to, with interest and costs of suit. The judgment can only be satisfied out of the property levied on. It is not for any other purpose even prima facie evidence of indebtedness.

"It is evidently the design of the statute that the plaintiff shall be restricted to the particular demand set out in his affidavit. The court may upon satisfactory proof enter a judgment for the plaintiff for the amount claimed in the affidavit, and accruing interest, and subject the estate attached to the satisfaction thereof and the costs of the proceeding. Beyond this the court has no authority to adjudicate upon the rights of the parties. It only has jurisdiction     *     *     *     for the purpose of subjecting the property attached to the payment of the particular cause of action specified in the affidavit. This precise question arose in the case of Honrie v. Sweazy, 5 Blackford, 273."

The cases above cited were on appeal, but in several of them

the failure of citation after amendment was held to be error fundamental in character, and there is good reason for holding that the same ruling should be made when the question arises collaterally, if the only notice was by publication made prior to an amendment setting up a new and an independent cause of action.

The court not having jurisdiction over the person of Humphries, no judgment, even before the amendment was made, could have been. rendered other than one essentially *in rem.* (Pennoyer v. Neff, 95 U. S., 714.) To authorize that, under the statutes of this State, notice by publication, there being no appearance, and the seizure of property in such manner as to bring it within the custody of the law and enable the court to condemn it to sale and its proceeds to apply to the debt due Harrell, were necessary.

It is very generally held that if an attaching creditor setting up one cause of action and suing out an attachment upon it, so amends his petition as to set up a new and independent cause of action, and thereon takes one judgment, that this dissolves the attachment at least as to subsequent attaching creditors, purchasers and bail. (Willis v. Crooker, 1 Mass., 204, Fairfield v. Baldwin, 12 Mass., 180; Laighton v. Lord, 9 Foster; 256; Page v. Jewett, 46 N. H., 441; Tilton v. Cofield, 2 Colorado, 392.)

The case last cited was one in which the amendment made was held by the Supreme Court of the United States on appeal not to set up a new cause of action, and that the subsequent purchaser took subject to the attachment suit, but we do not understand that court to question the correctness of the rule stated in the cases above cited. If that rule be a correct one in cases in which seizure is not an element of jurisdiction, it may have an important bearing in cases in which seizure is an essential element. If a defendant be not brought before the court by process which gives jurisdiction over his person, and do not voluntarily appear, no judgment can be rendered that will bind him personally in an ordinary action for debt on the mere fact that he has property within the reach of the process of the court. While seizure may lead to notice that a demand is made, this is not the essential purpose that makes it necessary in attachment and like cases.

That purpose is to confer upon the court the power to render a judgment whereby the thing seized may be subjected to the

payment of the demand asserted; which can not be done in an action not personal, unless the person asserting a demand for money has in some way obtained the right to have the thing seized, subjected to the payment of the sum due him. In attachment cases, this right is acquired through the lien given by the levy of a writ of attachment; and, if the lien be lost by the dissolution of the attachment, the power of the court to render a judgment is lost, unless the court has acquired jurisdiction over the person of the defendant. It is unnecessary for us to determine whether the attachment sued out by Harrell was dissolved.

The cause of action on which the judgment was rendered in his favor was the cause of action stated in the pleadings on file the day the judgment was rendered, and, to answer that, no notice of publication was given to Humphries, and he did not appear. No attachment was levied to secure and enforce the payment of the claim thus made a cause of action. The judgment rendered is an entirety, and was rendered when the court had no power to render it. If a valid judgment might have been rendered on a part of the cause of action set up, it was not done, nor was the court asked or permitted to do so. We think the judgment null. (McMim v. Whelan, 27 Cal., 313; Janney v. Spedden, 38 Mo., 401; Boswell v. Dickinson, 4 McLean, 262.)

The intervenor Wiswell claims the Scates survey, which he alleges embraces a part of the land described in the plaintiff's petition. This claim is founded on the fact that the patent under which he claims calls for the line of the Houston survey, which is shown to have been an old and abandoned survey whose lines have not been identified, which however is shown to have covered substantially the same ground now covered by the Long survey.

The surveyor who made the survey under which the patent to the Scates survey issued, testified in the cause, and his evidence shows clearly the true location, and that the Houston survey was called for in the field notes but never found on the ground. It was at one time thought that from the northwest corner of the Scates to the northeast corner of the Houston, now Long survey, it was only two thousand varas. The northern line of the one is the prolongation of the other. By measurement, however, the real distance between those points was found to be three thousand and forty varas.

The call for the west line of the Houston, a line never found, can not extend the Scates survey to the point where the Houston west line would be placed by course and distance from its beginning corner whose true position is not controverted; and especially so when it is shown by the surveyor who surveyed the Scates when its lines were by him actually fixed on the ground. As thus placed, the intervenor receives all the land called for in the patent under which he claims, while to extend his eastern line to the western line of the Long would give more than twice the area called for in the patent, or that could have been appropriated by virtue of the Scates certificate.

The judgment of the district court being erroneous, will be reversed, and as the cause was tried without a jury, and all the facts necessary for its final disposition are found in the record, it will be here rendered in favor of the appellants as against Wiswell, as well as the other defendants. It is so ordered.

                                        *Reversed and rendered.*