# FIRST DISTRICT, 1897.

M. T. JONES LUMBER COMPANY V. F. W. RHOADES ET AL.

Delivered April 29, 1897.

**Judgment—Collateral Attack—Dead Defendant.**

A judgment rendered against a defendant in the suit who was dead at its institution is void, and subject to collateral attack.

APPEAL from Harris. Tried below before Hon. J. R. BURNETT.

*Coleman & Ross,* for appellant.—1. The plaintiffs' suit was in effect one in trespass to try title under the statute, with some additional allegations partaking of the nature of allegations in a suit to remove cloud from title. The attempt by the plaintiffs below to avoid the effect of the judgment rendered in the case of the M. T. Jones Lumber Company against Eben Rhoades and his wife, Mrs. E. Rhoades, when the same was offered in evidence by the defendant, was a collateral attack upon that judgment, and the attack upon the sheriff's sale under the judgment was likewise collateral. Johnson v. Bryan, 62 Texas, 626; Sayles' Texas Pl., secs. 521, 217; Vanfleet on Coll. Att., sec. 3; Crawford v. McDonald, 88 Texas, 626, 630.

2. The rendition of judgment against Eben Rhoades and Mrs. E. Rhoades, his wife, in the cause of the M. T. Jones Lumber Company v. Eben Rhoades et al., was a finding that they were in existence at the time the suit was instituted and the judgment rendered, and legally capable of defending their rights, and the judgment concludes all persons in a collateral proceeding, or suit, from denying that they were in fact in existence, and the judgment in that case is in all respects to be treated as if there were no questions as to the existence of the defendants at the time suit was commenced and the judgment rendered. Taylor v. Snow, 47 Texas, 462; Ledbetter v. Higbee, 35 S. W. Rep., 801; Vanfleet on Coll. Att., secs. 602, 603, 587; Trail v. Snouffer, 6 Md., 308; Wilcher v. Robertson, 78 Va., 602; Carr v. Townsend's Executors, 63 Pa. St., 202; Otis v. DeBoer, 116 Ind., 531; Jeter v. Hewitt, 22 How., 352; Waterhouse v. Cousins, 40 Me., 333; Wardner v. Tainter, 4 Watts, 270; Murray v. Weigle, 118 Pa. St., 159; Watt v. Brookover, 35 W. Va., 323.

*Burke, Griggs & Co.,* for appellees.—1. No person can be divested of the title of his property in a suit between other parties to which he is not a party and of which he has no notice, and such judgment rendered in such suit is not binding upon him, and is not admissible in evidence against him in any future proceeding in which the title to the property is in controversy. Foster v. Powers, 64 Texas, 248; Freeman v. Hawkins,

14 S. W. Rep., 364; Read v. Allen, 58 Texas, 381; Rhine v. Hodges, 21 S. W. Rep., 140; Jeffus v. Allen, 56 Texas, 195; Foster v. Andrews, 23 S. W. Rep., 610; Read v. Allen, 56 Texas, 183; Norton v. Norton, 25 S. W. Rep., 750; Yerkes v. Steele, 50 Barb., 397.

2. Were it conceded that appellees' ancestor, Ebenezer Rhoades, was the defendant in appellant's former suit, yet when it be shown that such defendant was dead at the time the sale was made under such judgment in such suit, it would be sufficient grounds upon which to hold that such sale passed no title. Conkrite v. Hart, 10 Texas, 140; McMiller v. Butler, 20 Texas, 402; Chandler v. Burdette, 20 Texas, 42; Robertson v. Paul, 16 Texas, 472; Buchanan v. Monroe, 22 Texas, 540; Powell v. Heckerman, 25 S. W. Rep., 167; Hooper v. Caruthers, 15 S. W. Rep., 99.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action by appellees to recover of appellant two lots of ground in the city of Houston. The petition contained some special allegations and prayers, but the case will be treated as an action of trespass to try title, as appellant contends it is.

The defendant pleaded not guilty and limitation of three and five years. The cause was tried under an agreement to the effect that source of title common to the parties was Ebenezer Rhoades, and that "the said Eben or Ebenezer Rhoades had title to said property by regular chain of transfer," etc.

It was proved that Ebenezer Rhoades was a resident of Massachusetts, and died there August 24, 1871, never having resided in Texas. Plaintiffs are his heirs and have always been nonresidents of this State and citizens of other States. The defendant (appellant) introduced in evidence the following judgment of the District Court of Harris County:

"M. T. JONES LUMBER CO.
"No. 13,275.   v.              January Term, 1890.
   "EBEN RHODES ET AL.

"Now on this the 5th day of February, 1890, this cause came on for trial, when came the plaintiffs by their attorney, and it appearing to the court that the defendants, Eben Rhoades and Mrs. E. Rhoades, his wife, are nonresidents, and that they have been duly cited by publication to the last term of this court in the manner and form as required by statute, and were without representation, thereupon appointed W. N. Shaw, Esq., to represent said nonresidents, and having filed an answer, and the parties by their attorneys announced ready for trial, and a jury having been waived, submitted this cause upon the facts as well as the law to the court; and it appearing to the court that the cause of action is based upon certificates regularly issued by the city of Houston against said nonresidents for laying a certain plank sidewalk as required by the ordinance of the city council thereof, in favor of John Tolken, duly transferred to the plaintiffs herein, the M. T. Jones Lumber Company, as set out in plaintiffs' petition, and having heard the pleadings and evidence

aforesaid and being duly advised thereof, doth order, adjudge, and decree that the plaintiffs, the M. T. Jones Lumber Company, do have and recover of and from the defendants, Eben Rhoades and Mrs. E. Rhoades, his wife, the sum of twenty-four dollars, together with 8 per cent per annum thereon from this date until paid, and all costs in this behalf incurred, including a fee of ten dollars to be paid W. N. Shaw, Esq., attorney as aforesaid, appointed by the court to represent said nonresident defendants. It is further ordered, adjudged, and decreed that the lien of the plaintiffs as stated by and claimed in their petition be and the same is hereby foreclosed against the defendants, Eben Rhoades and Mrs. E. Rhoades, his wife, on those certain lots and parcels of land lying and situated on the south side of Buffalo Bayou, in the city of Houston, Harris County, Texas, known and described on the maps of said city as lots 4 and 5 in block 182, are hereby decreed and ordered to be sold as under execution to satisfy the sum of twenty-four dollars and interest and costs above adjudged to plaintiffs and all costs of sale; if there be any surplus it shall be paid into the court for the benefit of the defendants, Eben Rhoades and Mrs. E. Rhoades, his wife, but if the said property does not bring enough in the above sale issued to satisfy this judgment, no execution against the defendants shall issue for any balance that may remain unpaid of this judgment after applying the proceeds of such sale to the satisfaction of this judgment."

Under this judgment the lots were regularly sold and bought by and conveyed to appellant. At the time the suit in which this judgment was rendered was instituted, both Rhoades and his wife were dead, the latter having died in 1851. There was no seizure of the lots in controversy. These facts were found by the court below, and as to them the findings are not questioned. The court further found as a fact that appellant had not held possession as long as three years and was not a possessor in good faith. These last named findings are attacked, but we find them sustained by the evidence.

The court held that the judgment was void because the suit was instituted after the deaths of the defendants in that suit, and because the property was not seized, and that no title passed to appellant by the sale, and that his claim did not constitute title or color of title sufficient to support the plea of three years' limitation. The decision depends upon the correctness of the court's conclusion that the judgment under which appellant claims was a nullity because the suit was instituted after the death of both of the defendants and without a seizure of the property.

As to the validity of judgments in favor of or against persons rendered after their death, there is great contrariety of opinion. One class of authorities holds that all such judgments are absolutely void. Another class holds that those which are rendered in suits commenced after the death of the party are void, but that where the parties are alive when the suits are commenced and the court once acquires jurisdiction over their persons, judgments therein rendered are not void, though the parties

be dead before their rendition. Other cases take the broad position that the judgments are not void in either of the cases stated, but that they are only voidable by direct proceeding.

Speaking of the cases mentioned in the first and third classes, Mr. Freeman says: "We apprehend that neither position is correct. That there should, at some time during its progress, be living parties to both sides of an action, we think indispensable; and that no sort of jurisdiction can be obtained against one who was dead when the suit was commenced against him as defendant, or in his name as plaintiff; and that no judicial record can be made which will estop those claiming under him from showing that he died before the action was begun; and that a judgment for or against him must necessarily be void." Freeman on Judgments, sec. 153. To the same effect is Black on Judgments, sec. 203. Vanfleet, in his work on Collateral Attack, holds that the judgment is valid until set aside by direct attack, whether the party died before or after the commencement of the action. Sections 587, 602, 603. The decisions upon all of the phases of the question will be found cited by these authors at the places in their works above indicated, and in the note by Freeman to the case of Watt v. Brookover (W. Va.), 29 Am. St. Rep., 816-819.

There are also decisions holding judgments against corporations, obtained in suits commenced after their dissolution, to be void. See note just referred to. Some of the cases cited to the different propositions can not, we think, be considered fairly decisive of them, but it is unnecessary to undertake an analysis of them, as each of the propositions stated is undoubtedly supported by weighty authority. In most of the authorities holding that a judgment is not void, when obtained in a proceeding commenced after the death of a party, it is assumed that there is no difference in principle between such a case and those in which the party was living when the suit was brought and was brought within the jurisdiction of the court, but died before judgment. The fundamental proposition on which such decisions rest and which they hold applicable to both classes of cases is that the record is conclusive evidence of the jurisdiction of the court and can not be impeached by proof of the death of the party before judgment.

We think these assumptions are not consistent with sound principle; that there is a clear distinction between the two cases stated, which renders the rule of evidence, as to the conclusiveness of the record, applicable to one and inapplicable to the other. If a party is alive when the suit is commenced and brought into court, the jurisdiction attaches to render a judgment which will bind not only himself, but his privies, those who shall take his estate after his death. Upon elementary principles his death does not take away the power of the court to proceed to judgment. The rules of correct procedure require that his representatives be brought in and allowed a hearing before the judgment is pronounced, but a failure to do so is an error which does not destroy the power of the court. The power to render judgment remaining, its exercise without an observance of the proper procedure is merely an irregularity. It is true

that it has been said in some of the decisions that, even in this case, if the record show the death of the party pending suit and the failure to make his representatives parties, the judgment will be void, but this can hardly be regarded as settled in this State.    See Milam County v. Robertson, 47 Texas, 233.

We have assumed, in the supposed case, that the party is brought within the jurisdiction of the court. Whether he has been or not is to be determined by the application of rules of evidence applicable to judicial records. As to the effect of the record as evidence of jurisdiction over the person, there is again a conflict among the authorities, but we take it to be settled in this State that, in ordinary cases involving the question of service upon a party to a judgment who could have been reached by the process of the court, the record conclusively establishes the service unless it shows affirmatively that it was not had. Hence a judgment between parties within the reach of the process of the court while the suit was pending will conclusively establish the jurisdiction over them; and, as the death of one of them pending suit will not defeat the jurisdiction, the judgment will be valid in a collateral proceeding, regardless of such death.

In the case supposed, the recital of service, or the silence of the record having the same effect as such a recital, is of something done in the proceedings in a case between two parties both of whom were within the jurisdiction of the court and could be brought before it by its writ. The judgment, if in fact rendered without proper notice, can be corrected by direct proceedings of the party or by his representatives, if he die pending suit, and the law, for reasons of public policy and for the protection of third persons, relying and acting upon the proceedings of the court, requires the parties to resort to such proceedings for the correction of the judgment, and will not allow it to remain forever open to impeachment in collateral proceedings by proof, against the record, that the notice was not given. Third persons who buy property under such judgments can not know that the party to it was not in fact served, as the record imports, but are expected to rely upon the integrity of the proceedings; and the law for this reason will not permit the proceedings to be questioned.

This rule is, by some of the courts, applied so as to make the record conclusive evidence that the party was alive when the suit was brought and was served with process, and it is upon this premise that judgments in cases where parties were dead before the commencement of the suit have been upheld. But this course of reasoning, properly understood, is, we think, almost wholly inapplicable to a case where there never was but one party to the record, and such is the case where a person intended to be made a party was dead when the action was begun. The living party is the only one who is or can be brought within the jurisdiction of the court. The judgment, in the nature of things, can not conclusively determine the fact that the party was living when in fact he was dead.

The conclusive presumption of jurisdiction, depending alone on serv-

ice, is wholly inapplicable· to such a question. That presumption is of the procedure had in the case only, and exists because the action of the court is considered better and safer evidence of the procedure taken than parol evidence could be. But the fact of death is one outside of and beyond the procedure of the court. It is a fact which makes it impossible for the court to put itself in a position to adjudicate anything. If the court makes inquiry as to and determines the fact, it determines it with only one party within its power. Such a determination can bind no one because made nominally: against a party who does not exist. · It can not bind the estate of a decedent because the estate is not even nominally represented. The dead man can not represent it and no one else does so, because no one else is party to the record or is called upon to appear. The case differs from those in which the party dies after suit, in that the court never has but one party to the proceeding, and hence has no power to make a record which is conclusive of·anything.

What we consider the error in the doctrine under discussion seems to have arisen in the attempt to push beyond its just limit the rule making the record conclusive; evidence of jurisdiction where it depends upon mere questions of procedure in the case, and to make the judgment conclusive evidence of facts beyond the power of the court to conclusively establish. If a judgment against a dead person must be held, for the purposes of that case, to conclusively establish that he was alive when the action was commenced, a judgment finding a man to be dead and granting letters of administration on his estate must be equally conclusive, for the purposes of such proceeding, that he was dead, and would exclude all evidence that he was alive when the administration was granted, if offered in a collateral proceeding to affect its validity. And to that extent the logic of the authorities holding such doctrine has carried them. Vanfleet on Coll. Att., sec. 608, and authorities cited.

Yet, in this State, it is said by Judge Bell, in Withers v. Patterson, 27 Texas, 497: "In the case of an administration upon the estate of a living man the court necessarily determines that the man is dead, and yet the man may be shown to have been alive at the time of the judgment; and in such case, although every step in the proceeding by which the man's estate is sold may have been taken with the most perfect regularity, and although the purchaser buys in good faith, no title passes or can pass."

And in Martin v. Robinson, 67 Texas, 375, Judge Stayton says: "The decease of a person on whose estate administration is sought is a fact essential to the jurisdiction of a probate court to grant letters of administration, for it is only over the estates of deceased persons that to such court jurisdiction is given by law. If the person on whose estate administration is sought be alive, power to inquire whether this be so or not does not exist, hence no declaration of the court to the contrary can be given any effect."

These are dicta; but they have, so far as we know, passed as the unquestioned law of this State. The existence of a party is essential to the jurisdiction of a court in a suit against him. If he is dead the court has

no power to determine that he is alive. Being dead, he is not and can not be a party, and hence the judgment of the court is necessarily null, unless it is true that jurisdiction over a party is not essential to the validity of the judgment.

Another illustration of the fallacy of the assumption that, because the record establishes the regularity of the process by which jurisdiction of the party within the reach of the process of the court is obtained, it also establishes the fact that the party was alive, or in other words, that he was within the jurisdiction of the court, is shown by the decisions as to the effect of judgments against persons who are nonresidents of the State where the judgments are rendered. The process of the courts of the State can not reach beyond its territorial limits and bring before them persons from other jurisdictions. But if the judgment always conclusively proves jurisdiction over parties, no evidence could be heard to show that a particular party was a nonresident unless the record should affirmatively show it. This was once held by many courts as the rule applicable to domestic judgments, but it can hardly be maintained that it is now the law. Northcraft v. Oliver, 74 Texas, 167; Pennoyer v. Neff, 95 U. S., 732; Needham v. Taylor, 147 Mass., 536; Elliott v. McCormick, 144 Mass., 10.

A judgment against the name of a man who has died before its rendition really operates, if at all, against those who have taken the estate which belonged to him. In cases where the court acquired jurisdiction over him before his death this is or may be, entirely just, because, as we have already seen, that jurisdiction includes the power to render a judgment against him which will bind him. But if the ancestor was dead before the suit was commenced the process of the court could not reach him and, through him, his privies. If the judgment in such case is to bind and affect them, in respect of the property which they took from him, it is done without any process to which either the ancestor or themselves are parties. The so-called suit against the dead man is essentially a suit against a fictitious person.

The present case illustrates some of the absurd consequences of the doctrine of the cases under discussion. Nearly twenty years after the death of the ancestor the suit is commenced, with his name as defendant; he is cited by publication, and the heirs, without notice or hearing, are to be deprived of their property under a judgment against the mere name of the ancestor. There are many dicta in our reports which would farrant the holding that the property, under these circumstances, had vested absolutely in the heirs and was freed from all liability to be taken for the debts of the ancestor, and that an administration on the estate, granted after so great lapse of time, would be void. This principle is not, however, very clearly established in our decisions. Martin v. Robinson, supra. But, if it were, and a judgment against the dead man has all the conclusive effect given to it by some decisions, it is not seen how protection could be obtained under it.

It remains to inquire whether the doctrine under discussion has been

established by the decisions in this State. In many cases, the effect of judgments against persons dead at the time of their rendition has been considered. In all of them, which we have found, except four, the reports show that the death occurred pending the proceeding and after jurisdiction was obtained; and it was held that unless the record showed the death, the judgment was not void but only erroneous. Later cases intimate the same view as applicable even if the record does show the death. These cases, as we have seen, can be sustained without giving to the record any such conclusive effect upon an inquiry as to the fact of death as is ascribed to it by some courts.

In two of the cases, however, the reports show that the party died before the proceeding was begun, and in the third and fourth he may have done so, but the reports do not show it. In Mills v. Alexander, 21 Texas, 154, the report shows that the judgment attacked was rendered in 1839 against a party who died in 1833. The time of the commencement of the suit does not appear, but it is probable that it was after the death occurred. The court held that it was not open to attack in a collateral proceeding, citing authorities which showed such a holding concerning judgments against persons alive when the suit was brought but dead when judgment was rendered.

In Thouvenin v. Rodriguez, 24 Texas, 468, the plaintiff in the judgment was dead before the suit was commenced. It was held that such fact would not by itself render the judgment void in collateral attack, but that it might be proved under a plea attacking the judgment for fraud as a circumstance tending to substantiate it. This decision was based on the authority of Mills v. Alexander, and Weaver v. Shaw, 5 Texas, 286.

The decision cited from Louisiana does not involve or discuss this question. In Weaver v. Shaw the party died pending the suit.

Rodriguez v. Lee, 26 Texas, 32, involved the same judgment passed upon in Thouvenin v. Rodriguez. The plaintiff (appellant) sued in trespass to try title and the defendant pleaded not guilty. Under the latter plea, the defendant introduced the judgment and execution sale to show a divestiture of plaintiff's title, and plaintiff, in rebuttal, offered evidence, which was excluded, to prove that plaintiff in the judgment was dead when the action in which it had been rendered was commenced. The Supreme Court reversed this ruling, saying: "Appellant was not required to plead any facts showing the nullity of this judgment, or the title to be acquired under it, because the appellees had not set up in their answer any such title to the land in controversy. If it were competent for the appellees to offer this evidence of title under the general issue, which we think it was, it was equally so for appellant to rebut such evidence by showing the judgment to have been obtained by fraud."

While this decision does not assume to depart from the ruling in Thouvenin v. Rodriguez, we do not see how the conclusion can be avoided that it does so, except from the hypothesis that proof of the death of the party rendered the judgment a "nullity." The attack upon the judg-

ment was unquestionably a collateral one, and mere fraud in the obtention of the judgment could not, consistently with later decisions, be shown in such proceeding by the plaintiff therein, who was the party defendant in the former judgment. The court, however, put the ruling as to the admissibility of the evidence upon the ground that fraud could be shown.

In Taylor v. Snow, 47 Texas, 462, it does not appear whether the party to the judgment died before or after suit was brought. The charge which was held erroneous embraced the propositions, (1) that a judgment against a party dead before the suit was brought was void; (2) that any judgments against a dead man without making his legal representatives parties was void. Of this, the court merely say: "Evidently this charge of the court is in direct conflict with the law upon the subject as settled by repeated decisions of this court," citing cases. The evidence in that case is not reported, and may have made the latter proposition in the charge applicable. The whole of the opinion is consistent with that view.

None of these cases discuss the question or note any distinction between cases in which the party had died before suit and those in which he died pending suit. The authorities cited to sustain them are upon the latter phase of the question.

In Milam County v. Robinson, 47 Texas, 233, in which the party died pending suit, Judge Moore uses this language: "If, therefore, it can be said that a judgment rendered against a party *who dies after the jurisdiction of the court has attached* and before final judgment, is an absolute nullity, it would, unquestionably, be within the power of the court to vacate its entry and revoke its judgment in this case." He then intimates a doubt as to the correctness of decisions referred to holding that, if the record shows that the party died pending suit and before judgment, the latter would be void.

In Fleming v. Seeligson, 57 Texas, 531, the proposition is thus stated: "The fact that the one may have died and the other become insane during the pendency of the suit after the court had acquired jurisdiction of the persons by citation, appearance, and answer, and when represented by counsel, there being no suggestion of death or insanity, would not render the judgment void."

In the case of Powell v. Heckerman, 6 Texas Civil Appeals, 307, the court intimated an opinion upon this question in accordance with that which we hold, but considered itself bound by Taylor v. Snow, and the cases there cited. Subsequently, in Ledbetter v. Higbee, 35 Southwestern Reporter, 801, the same court held the same way, but held also that the evidence was insufficient to show the fact of death before suits, as against the judgment. The Supreme Court refused a writ of error in the latter case, but whether on the first or the second or both propositions does not appear. See also Morris v. Balkham, 75 Texas, 113.

We do not perceive that the decisions in this State have clearly and firmly established the proposition that a judgment rendered in a suit against a defendant dead at its institution is valid until set aside by direct

attack, and, as we are strongly convinced of the error of that proposition, we do not consider that we are constrained by authority to yield our conviction. If there were no other objection to the judgment relied on by plaintiff in this case, it would not be void because the land was not seized. The property was subject to the power of the court, by proper proceedings, to subject it to liens asserted against it securing debts owed by its owner. Pennoyer v. Neff, supra; Freem. on Judg., sec. 120a; Hasall v. Wilcox, 130 U. S., 493; Arndt v. Griggs, 134 U. S., 316; Guaranty Co. v. Railway, 134 U. S., 137.

A proceeding to subject the property to such lien is, to a certain extent, a proceeding in rem, but it is not purely a proceeding of that character. In a strictly in rem proceeding the property alone is proceeded against, and all the world are required to take notice, and the claims of all persons are affected by the judgment. But, in a suit like this, only the interest of the party proceeded against is sought to be reached, and hence only his interest, or that subject to the liability asserted against him, is affected by the judgment. Cooper v. Reynolds, 10 Wall., 308; Windsor v. McVeigh, 93 U. S., 277.

While the property, too, is proceeded against, it is only sought to be appropriated as that of the defendant named in the proceedings. Hence the interests of others are unaffected. In such a suit jurisdiction over the person sued is not essential to a judgment subjecting the property; but, under our statute notice of a prescribed character, and probably under fundamental law, notice of some character is essential to enable the court to render a valid judgment against the property even where it is seized. Such notice must be addressed to the person who is sued as the owner of the property. Stewart v. Anderson, 70 Texas, 588.

It is not competent to sue and give notice to one person, as owner, and take away the title of another by the judgment. And this raises the question, which we have discussed, whether or not, by suing and publishing notice in the name of a man who is dead and beyond the reach of the process, the title of the heirs, to whom his property has descended, can be divested by the judgment. The notice to the dead man is not notice to them, and the proceeding is not against them. They can not be reached as privies of the ancestor, because he is not in existence so as to make the proceeding good against the title which he had held. Our statutes provide for service by publication on unknown heirs of deceased owners of property in this State, and this shows that it is not contemplated that suits may be brought against the deceased ancestor and the property of the heirs taken by a judgment against him.

The reasons of public policy which have led the courts to hold judicial records conclusive as to the taking of the steps by which jurisdiction over the person is obtained do not require that the rule should be carried so far as to establish the conclusive presumption that the party was alive when the suit was brought. The death of the party is a fact which may be ascertained by individuals as easily as by the court. A person

purchasing under a judgment against a party takes his title from such party, and must know whether he is living or dead, and when he died, just as if he purchased from his heirs or through an administration or under a will. There is no more reason for a mistake in the one case than in the other.

We think the judgment of the court below was correct.

*Affirmed.*

Writ of error refused.