### Mentor Thomson et al. v. E. L. Shackelford et al.
#### Nos. 163 and 223.

1. **Construction of Will.**—It was provided in a will that the "executor shall collect all moneys due me by note or otherwise and divide the same equally between my heirs, as he may deem right and equitable." There was nothing in the will conflicting with this provision. All the debts of the testator had been paid. The executor in collecting a debt bought the land in controversy, taking the deed as executor. *Held,* that the land took the place of the debt, and each heir had same interest therein as in the debt.

2. **Sale to Defraud Creditor.**—See facts held to show a fraudulent sale on part of vendor, and that the purchaser knew the facts constituting the fraud at time of his purchase.

3. **Levy as Against Unrecorded Deed.** — An attachment was levied upon the land in controversy. The land had been sold by the defendant in attach-

ment before the levy, but the deed was not of record in the county, nor did the plaintiffs have notice. *Held*, that sale under the attachment lien passed title as against the purchaser holding under the unrecorded deed.

4. **Common Source.**—Both parties claiming under the estate and will of James E. Bouldin, Sr., it was unnecessary for plaintiff to deraign title from the sovereignty of the soil.

5. **Jurisdiction—Nonresident—Attachment.**—Where suit by attachment is brought against a nonresident defendant, the attachment levied upon land in this State, and the defendant is duly served with citation, under the statutes of the State, the court has jurisdiction, and it does not affect a sale under the judgment of the land seized by the attachment, that final judgment was rendered by default.

6. **Parties Concluded by Judgment.**—An executor was sued by one of several heirs. *Held*, that any adjustment or settlement litigated in the suit would be without effect as to the rights of the other heirs. See example. The suit would affect only parties.

7. **Fraudulent Sale.**—Sale with intent to defraud one of several parties equitably interested in the property. Such sale may be valid as to the others. They may not complain, or it may not be in fraud of their rights.

8. **Power of Independent Executor to Sell.**—An independent executor was empowered to sell any of the estate, real or personal, for the purpose of paying legacies named. This power is as full as the power to sell for payment of debts. While legacies were unpaid the power to sell was complete.

Appeal from Travis.    Tried below before Hon. W. M. Key.

*Fred Carleton* and *Gardner Ruggles*, for appellants.— 1.  Neither James E. Bouldin, executor, nor Shackelford had, under the will of J. E. Bouldin, deceased, any interest in the debts due the estate, nor in real estate acquired in virtue thereof; nor could nor did any accounting by said executor to said Shackelford invest said executor with any such interest.

2.  Plaintiffs having elected to deraign title from a common source, instead of from the sovereignty of the soil, failed to show such source, or in fact any title to the premises in controversy.  Rev. Stats., art. 4802; Tapp v. Corey, 64 Texas, 595; Linthicum v. March, 37 Texas, 349; Hendricks v. Stone, 78 Texas, 358; Howard v. Masterson, 77 Texas, 41; Glover v. Thomas, 75 Texas, 506.

3.  The court erred in holding that the sale and conveyance of the property in controversy from James E. Bouldin, Jr., as executor of the will of James E. Bouldin, Sr., deceased, to defendant Thomson, March 28, 1888, was made with intent to defraud plaintiff E. L. Shackelford, and that defendant Thomson had notice of such intent, and of said Bouldin's insolvency, and that by reason thereof said sale and conveyance were invalid as to any interest in the property then owned by either said Bouldin, Jr., or said Shackelford.    Bige. on Fraud, 297; Davis v. Christian, 15 Gratt., 11.

4. Thomson was and is an innocent purchaser for value, and without notice, either actual or constructive, of plaintiffs' attachment, and his purchase was not subject to their attachment lien. Hancock v. Henderson, 45 Texas, 484; Tuttle v. Turner, 28 Texas, 773; Drake on Attach., sec. 239.

5. The doctrine of lis pendens as notice can not be invoked as against appellant Thomson, or as affecting his purchase, because the property in controversy was not described or referred to in the petition (or any other pleading) in the case in District Court of El Paso County, nor was said property ever mentioned in any paper or proceeding in said cause until April 2, 1888 (long after Thomson's purchase), when the sheriff's return on the attachment writ was filed in said court. Bige. on Fraud., 301; Russell v. Kirkbridge, 62 Texas, 455; Shearon v. Henderson, 38 Texas, 245; Wade on Law of Notice, sec. 351; Lewis v. Mew, 1 Strobh. Eq., 180.

*Rector, Thompson & Rector*, for appellees. — 1. After the attachment levy of January 19, 1888, upon the premises in controversy as the property of James E. Bouldin, Jr., he had no power either as executor or individual to convey to defendant Thomson his individual interest in the property in controversy, whether acquired as legatee under his father's will, or as a result of the Pettis County, Missouri, judgment obtained against him by said Shackelford. The levy of said attachment secured to E. L. Shackelford all the legal or equitable interest James E. Bouldin, Jr., had in said premises, and Mentor Thomson was a purchaser pendente lite. Rev. Stats., art. 179; Tuttle v. Turner, 28 Texas, 773; Paxton v. Meyer, 67 Texas, 98; Riordan v. Britton, 69 Texas, 203; Baird v. Trice, 51 Texas, 560; Drake on Attach., 3 ed., 239; Castro v. Illies, 22 Texas, 503; Williams v. Barnett, 52 Texas, 130; Briscoe v. Bronough, 1 Texas, 337; Bryant v. Keller, 1 Texas, 442; Pasch. Dig., arts. 15, 609, et seq.; Wait on Fraud. Con., secs. 224, 231, 234, 239, 242, 194, 434; Russell v. Winne, 37 N. Y., 591, 596; Curtis v. Leavit, 15 N. Y., 96.

2. The sale from James E. Bouldin, as executor of the will of James E. Bouldin, deceased, of the premises in controversy to Mentor Thomson, dated March 28, 1888, being made with intent on the part of said James E. Bouldin to defraud E. L. Shackelford, and Mentor Thomson knowing of such intent, and being a party to the fraud, is void, and conveyed no interest whatever to said Thomson in said premises. A fraudulent conveyance is void in toto. Black v. Vaughn, 7 S. W. Rep., 605; Weisiger v. Chisholm, 28 Texas, 790; Weedon v. Hawes, 10 Conn., 50; Tickner v. Wishall, 9 Ala., 305.

3. Thomson is not an innocent purchaser for value; first, because at the time of his purchase he had actual notice of Bouldin's intent to defraud Shackelford by making said sale; second, because he had notice of

facts which should have put him on inquiry; third, because he had actual notice of said attachment levy; fourth, because he had constructive notice of said levy.    Williams v. Barnett, 52 Texas, 130; Mills v. Howeth, 19 Texas, 259; Humphreys v. Freeman, 22 Texas, 49, 52; Watkins v. Edwards, 23 Texas, 447; Hawley v. Bullock, 29 Texas, 222; Bremer v. Case & Deffenbaugh, 60 Texas, 152; Railway v. Chaffin, 60 Texas, 554; Paxton v. Meyer, 67 Texas, 98; Tuttle v. Turner, 28 Texas, 773; Baird v. Trice, 51 Texas, 560; Drake on Attach., 3 ed., 239; Bank v. Morse, 18 Atl. Rep., 367.

COLLARD, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by E. L. Shackelford and Millard Patterson, citizens of El Paso County, Texas, appellees, against Mentor Thomson, a citizen of Pettis County, Missouri, appellant, and James E. McCormick, a citizen of Travis County, Texas, to recover lot 7, block 71, in Austin City, and the southwest quarter of outlot 43, division E, of Austin City, and for damages, rents, etc.    McCormick disclaimed.    Thomson filed general demurrer and plea of not guilty.

October 27 appellees filed first supplemental petition, alleging claim of Thomson to be in virtue of a deed to him from James E. Bouldin, March 28, 1888; that no such deed was ever made; but if it was, that it was made by said Bouldin with unlawful and fraudulent intent to hinder, delay, and defraud his creditors, and especially appellee Shackelford, who then had, and for a long time had had, a large judgment against Bouldin unsatisfied; and that Thomson, with full knowledge of the fraudulent intent and acts of Bouldin, joined him in his unlawful purpose, rendering his deed from Bouldin, if any, invalid as to appellees by reason of such fraud.    October 27 Thomson filed first supplemental answer, with general demurrer and general denial.    On the same day appellees filed trial amendment, substantially the same as their first supplement, with additional averment, that at time of conveyance by Bouldin to Thomson, title was in Bouldin individually and not in estate of James E. Bouldin, deceased.    Thomson demurred.

October 31 appellees had a judgment for two-fifths undivided of premises in controversy against Thomson, for all costs (except costs as to McCormick, who recovered them against appellees), and for $82.61, being two-fifths of rents from March 28, 1888, to date of judgment, this last being against Thomson and sureties on his replevy bond of the premises, suit being by sequestration, viz., T. L. Wren, H. E. Shelley, and T. H. Miller.    From which judgment Thomson has perfected his appeal; both parties, plaintiffs and defendant, assigning errors.

*Opinion.*—Appellants insist that the court erred in holding that James E. Bouldin, Jr., and Shackelford each had a one-fifth interest in the debts

due the estate under the will of Bouldin, Sr., and that the purchase by Bouldin, Jr., of the property in suit with such debts put the title in each of them one-fifth each; and that the court also erred in holding that the accounting by Bouldin, Jr., to Shackelford for his share of the debts used to purchase the property vested title in the former to the latter's one-fifth of the property so acquired.

We can not agree to the propositions in the assignment. The will provided for some special legacies, and then declared, "It is my will that my executor shall collect all moneys due me by note or otherwise, and divide the same equally between my heirs, as he may deem right and equitable." There is nothing in the will conflicting with or contradicting this provision.

The executor was authorized by the will to sell and dispose of any portion of the estate, real and personal, at public or private sale, and in the manner that to him might seem best, for the purpose of paying just debts and legacies, except such part of the estate as was specially bequeathed and devised. No other general power to sell is given the executor by the will. He is authorized by the will to sell certain designated lands, the proceeds of which are divided among certain grandchildren. There were no debts against the estate at the time of the sale to Thomson.

The heirs owned the land in suit by the same right and in the same proportions as they owned the debts used by the executor to purchase it; Shackelford owning one-fifth and James E. Bouldin, Jr., one-fifth of the same. The original deeds in the purchase were to Bouldin, executor of the will of deceased Bouldin, and for the benefit of the estate. Weir v. Smith, 62 Texas, 12–15. But if it should be admitted that the executor had power under the will or the law to sell the land, he could not make a fraudulent sale—a sale of his individual interest to defraud his creditors. Such a sale would be void, and the purchaser affected with notice of the fraudulent intent would take no title as against creditors defrauded.

According to the facts and the finding of the court below, the executor sold the property in Austin to defendant Thomson for about one-third of its value. Bouldin, Jr., was Thomson's son-in-law, having married his daughter. They both lived and had for a long time lived in Sedalia, Missouri; Thomson was acquainted with Bouldin's business, knew about Shackelford's judgment, and had heard he was trying to collect it; Bouldin had talked with him about it, and told him it was unjust, and that he would not pay it if he could help it. Thomson testified by deposition on the trial in the court below, and says he does not think that at the time he took the deed from Bouldin the latter had sufficient property to satisfy Shackelford's judgment. It was shown that Shackelford had tried and had failed to collect his judgment by execution, except a small amount.

We are satisfied with the conclusion of the court below, that the sale to

Thomson was fraudulent, and that he knew the facts constituting the fraud at the time of his purchase. This being true, no title passed to him as against Shackelford, the creditor defrauded.

It is immaterial whether the interest of Shackelford under the will passed to Bouldin upon his accounting to the former for his part of the purchase price of the property, the evidence showing that it was a part of Shackelford's judgment. Shackelford might so accept it, as it seems he has done, by the attachment levy, foreclosure, and purchase under the judgment obtained in El Paso County, and as also appears by his attitude in this suit. If it did not so pass, Shackelford would himself be the owner, and could recover it in this suit against Bouldin's fraudulent vendee. Bouldin's individual interest of one-fifth of the property can not be denied, and the sale under the El Paso judgment would undoubtedly vest such interest in the purchasers. The court below rendered judgment for plaintiffs for only two-fifths of the land, Shackelford's original one-fifth and that of Bouldin. So far, at least, the judgment was correct.

We can not hold, as appellants contend we should, that there was error in the conclusion of the court below, that "Bouldin had no power, either as executor or as an individual, to convey to Thomson his *individual* interest in the property, whether acquired as legatee under his father's will or as a result of the judgment obtained against him by said Shackelford."

The court was correct. The levy was made before the deed to Thomson, and the deed was not recorded until after the return of the levy was filed in the suit of Shackelford. The levy and return created and fixed the lien before Shackelford, the creditor, had notice of the sale by Bouldin (Riordan v. Britton, 69 Texas, 203), which secured to the purchasers under the lien the title as against the debtor's former vendee. Grace v. Wade, 45 Texas, 522; Wright v. Lassiter, 71 Texas, 644; Lewis v. Johnson, 68 Texas, 450; Borden v. McRae, 46 Texas, 396.

This holding is, in our opinion, immaterial, as the deed to Thomson was fraudulent and secured to him no rights as against Shackelford as a creditor. The interest of Bouldin as legatee of the will was subject to levy of attachment against him, under the circumstances, showing that it was not held for further administration. The levy would be ineffectual against creditors of the estate holding valid claims; but in this case there are and were at the time of the levy no creditors of the estate. The executor of an independent will, under circumstances shown in this case, could not shield the property of himself as legatee or other legatees from execution.

It was unnecessary for plaintiff to deraign title from the sovereignty of the soil, both parties claiming from a common source—the estate and the will of James E. Bouldin, Sr. Keys v. Mason, 44 Texas, 142; Sebastian v. Brown, 75 Texas, 292; Garner v. Lasker, 71 Texas, 433; Calder v. Ramsey, 66 Texas, 219.

Applying the law as herein before expressed to other assignments of error

by the appellant Thomson, except one to be hereafter noticed, it will be seen that none of them can be sustained.

By amendment of his brief, appellant has raised a question by proposition under his thirteenth assignment of error which was not noticed in his original brief.

The thirteenth assignment of error is, that the court erred in not rendering judgment in favor of defendant Thomson for the title and possession of the entire property in controversy.

The proposition is, that the judgment foreclosing attachment lien on the property in controversy, order of sale, levy, and sale, were absolutely void, even as against Bouldin individually, he being a nonresident of the State, the judgment being by default, the process being contrary to due process of law, and that the sale was a deprivation of property without due process of law, contrary to and in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, and conferred no title on the purchaser.

The suit of Shackelford against James E. Bouldin, Jr., was filed in El Paso, Texas, January 12, 1888, and was based upon the judgment formerly obtained in Missouri. The petition alleged the residence of defendant to be in the State of Missouri, County of Pettis, "wherefore he prays for a writ of attachment against the property of defendant sufficient to satisfy the debt," etc.; "that defendant be cited as the law provides to answer this petition," etc. As such nonresident Bouldin was duly served with notice of the suit, as provided for in the Revised Statutes, articles 1230, 1231, and 1232, of which notice return was duly made as required in article 1233, and filed in suit March 6, 1888. On the same day of filing the suit plaintiff filed an affidavit for attachment, showing that James E. Bouldin was indebted to him in the sum of $11,492.45 principal and $1547 interest on the judgment, and alleging that defendant was not a resident of this State, but was a resident of Pettis County, State of Missouri. The affidavit also alleged that the attachment was not sued out for the purpose of injuring or harassing defendant, and that plaintiff would probably lose his debt unless attachment should be issued. The writ of attachment issued the next day, January 13, 1888, to the sheriff or any constable of Travis County, commanding him to attach property of defendant sufficient to make the debt, etc. The return of the sheriff shows that the sheriff of Travis County received the writ on the 19th day of January, 1888, and executed it on the same day by levying upon the property in controversy and other lands as the property of defendant Bouldin. The return was filed in the suit in El Paso on the 2nd day of April, 1888. Judgment by default was had against Bouldin, the defendant, on the 16th day of July following, in favor of Shackelford, for $13,691.42 and interest from date, foreclosing attachment lien upon the property levied on, and ordering sale of the same. The judg-

recites, "This cause was duly called for trial, and the plaintiff being present by attorney, announced ready for trial, but the defendant came not, but wholly made default, after having been duly cited to answer herein."

In support of his proposition, appellant cites us to Reno on Nonresidents, sections 236, 238, and 242.

The author, in the sections referred to, discusses the effect of a "general attachment" where no property is seized or found by the officer, where no property is described or actual levy is made (Id., 335), where the officer neither finds nor attempts to find any real estate of the defendant. Id., 242, p. 290. In such case the land is not brought under the control of the court. "There is no seizure under a general attachment until after payment." Id., 240. The same author, however, proceeds to show that when there is a seizure of defendant's property at the commencement of the action, and service by publication, "it is well settled, that such process is due process of law in attachment suits." Id., 241. The author supports this by citation from Pennoyer v. Neff, 95 United States, as follows: "Substituted service by publication, or in any other form, may be sufficient to inform parties of the object of the proceedings taken where the property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of the owner, in person or by agent, and it proceeds upon the theory that its seizure will inform him not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale."

, The attachment in the suit of Shackelford was not a general attachment. The record shows that it was issued at the commencement of the suit, prayed for in the petition, and that it was executed by levying upon the property now in controversy, with proper description, and the return thereof made into court before the judgment, which duly adjudged and foreclosed the lien and ordered sale. There was service upon defendant nonresident by notice personally served as required by the statute, and in such case the attachment of the property gave the court jurisdiction to proceed to judgment and condemn the property attached to the payment of the debt. Stewart v. Anderson, 70 Texas, 588; Wilson v. Zeigler, 44 Texas, 657.

The foregoing disposes of the case so far as appellant's assignments of error are concerned, and the judgment of the lower court must as to him be affirmed. Appellees, however, on their cross-appeal claim that the court below should have rendered judgment for them for all the land, upon several grounds.

They say that James E. Bouldin bought in the property for himself and in his own name, and therefore, under the attachment, foreclosure, and sale, they should recover all the land.

We think the evidence abundantly shows that the property was bought at the trustee's sale by Bouldin as executor of the estate, and that it became assets of the estate to be disposed of under the will. He bid for the land as executor by his agent, it was sold to him as such executor, and he paid for it by credit on the debts belonging to the estate, to pay which the land was sold. The original deeds were made to him " as executor of the last will of James E. Bouldin, deceased, and for the benefit of his estate." The terms of the deeds vested the property in the estate; but if they did not, the fact that the property was purchased wholly with debts belonging to the estate vested it in the estate. Weir v. Smith, 62 Texas, 1.

Appellees contend, that as Bouldin accounted for the entire price of the land, he became the owner, and therefore the attachment, levy upon, and sale as his property gave full title to the purchasers at the sale to all the land.

The evidence does not bear out the assumption that Bouldin accounted to any of the legatees of the will for their interest in the land, except Shackelford.

Bouldin testifies, that he accounted for every dollar received by him for lands of the estate sold by him; but in another part of his testimony he says he accounted for the same in the Shackelford suit against him—the original suit in Missouri.

Our conclusion from the evidence is that he and Shackelford were the only parties to that suit. He could not, by accounting to Shackelford, acquit himself of the amount due other legatees. Their interests were not concluded by that suit. We can not from the testimony find the fact contended for to justify the claim of appellees.

Appellees contend that they are entitled to all the land in suit, because the sale to Thomson by Bouldin was found by the court to have been made to defraud Bouldin's creditor, Shackelford, in the collection of his judgment, and was therefore ineffectual to convey the interest of other legatees.

This conclusion does not necessarily follow. The other legatees may be satisfied with the sale—they may be protected. It is only the sale of Shackelford's and Bouldin's interest in the land that is attacked as a fraud; and a fraud upon Shackelford, not a fraud upon others. Until the other legatees complain and move to set aside the sale, it should not be declared void as to them, if Bouldin had power to make the sale.

But it is insisted by appellees that the sale is a nullity, because the facts did not exist under which the will gave the executor the power to sell.

We can not so hold. The will was what is called an independent will—to be executed independently of the courts—and empowered the executor " to sell and dispose of any portion of my estate, real and personal, at public or private sale, and in the manner that may seem to him best, for the pur-

pose of paying my just debts and the legacies herein bequeathed, saving and excepting, however, from such sale and disposition of that portion of my estate herein specifically devised." The will then proceeds to direct the executor to sell 400 acres of land near Warsaw, known as the White Sulphur Springs tract, and a lot on Morgan Street in the city of St. Louis, Missouri; devoting the money received from the sale to certain grandchildren—one-third to the children of David W. Bouldin, one-third to the children of James E. Bouldin, and one-third to the children of Mary Fox. The parents of the children are requested by the testator to invest the money so bequeathed in securities until the children arrive of age or marry. The will then proceeds to bequeath and devise certain specified properties to certain other named children and grandchildren, bed servant, etc.; after which follows the clause, " It is my will that my executor shall collect all moneys due me, by note or otherwise, and divide the same equally between my heirs as he may deem right and equitable." It concludes with a special bequest of a gold watch and chain to D. W. Bouldin.

No debts existed at the time of the sale to Thomson, but there were legacies to be paid. The land in controversy had not been divided among the heirs, as directed by the will, it being the product of notes belonging to the estate. The power in the will was to sell *any portion* of my estate, real and personal, for the purpose of paying the legacies herein bequeathed, excepting only from the power of sale the property specially bequeathed and devised. The power to sell was general as to all other property. The exception was definite, and should not be made to include other property. The right to sell is not limited to the sale of the particular named two tracts of land to be sold to raise a fund to be invested for the grandchildren, because the power given was to sell *any portion* of the estate, real and *personal*. The power to sell to pay legacies is as full as to pay debts. The power to sell to pay legacies was general. The property in controversy was the product of notes due the testator, and must be disposed of by the executor as the notes were required to be, divided between the heirs as the executor might deem right and equitable. To do this, and in order to pay the legacies as directed, he could sell the property. The legacies out of this very property were unpaid. The power to sell, in our opinion, was complete.

We conclude that Thomson was not a mere trespasser, without claim, and plaintiffs were not entitled to recover all the land—their own interests and that of other alleged tenants in common.

The judgment of the lower court is affirmed; appellant to pay the costs of his appeal, and appellees to pay the costs of their appeal.

*Affirmed.*

Delivered January 31, 1894.


Associate Justice Key did not sit in this case.