CONNELL v. NICKEY et al. (No. 611.)

(Court of Civil Appeals of Texas. Amarillo. May 2, 1914. Rehearing Denied May 23, 1914.)

1. APPEAL AND ERROR (§ 267*)—REVIEW—EXCEPTIONS.

An exception embodied in an order overruling a motion for a new trial is sufficient to authorize a review of the judgment, without a special exception to the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1447, 1460, 1572–1578, 1581; Dec. Dig. § 267.*]

2. JUDGMENT (§ 143*)—DEFAULT—VACATION—FRAUD.

Where defendants neglected to appear at the appearance term and defend because they were informed by their attorneys that the case was settled and either had or would be dismissed, which was in fact untrue, and a default judgment was thereupon entered, the attorneys' misrepresentation, whether due to mistake or fraud, was not mere negligence, which would be imputed to complainants, but constituted fraud in law, for which complainants were entitled to have the judgment set aside in equity.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 269, 270, 272–291; Dec. Dig. § 143.*]

3. JUDGMENT (§ 809*)—PROCEEDING IN REM—ENTRY—TIME.

Ordinarily where an action is brought against a nonresident by attachment of property located within the state, judgment will not be rendered until jurisdiction and service has been procured for the required length of time before the court convenes for the term at which judgment is rendered.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1434; Dec. Dig. § 809.*]

4. CONSTITUTIONAL LAW (§ 309*)—DUE PROCESS OF LAW—PROCEEDING IN REM—JURISDICTION—NOTICE.

Where jurisdiction is sought to be acquired in a proceeding in rem by attachment, the sei-

zure of the property placed it within the jurisdiction of the court; but due process of law requires that the owner shall have an opportunity to be heard on the claim sought to be subjected, to which end some notice of the proceedings, beyond that arising from the seizure, prescribing the time within which appearance must be made is essential.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930; Dec. Dig. § 309.*]

5. JUDGMENT (§ 143*) — DEFAULT — NEGLIGENCE.

Where a suit was brought against nonresidents, and at the appearance term was changed to a proceeding in rem by the attachment of real property within the jurisdiction, and defendants did not appear because of notice from their attorneys that the case had been settled and would be · dismissed, whereupon plaintiff at the same term took judgment by default, without further notice of the change in proceedings, plaintiff's manner of taking judgment, without notice, refuted the imputation of negligence on defendants' part in failing to appear.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 269, 270, 272–291; Dec. Dig. § 143.*]

6. VENDOR AND PURCHASER (§ 16*)—CONTRACT —MEETING OF MINDS.

The owner of land offered to sell for $8,000, $4,000 cash, and the balance in two equal payments of $2,000 in one and two years, to be secured by vendor's lien and deeds of trust signed by the purchaser and his wife, the papers and cash payment to be deposited in a bank of the vendor's home town, and when so deposited the vendor agreed to execute a deed to the land. In the vendor's first letter she expressly stated she would not be bound by the letter until after she heard from the purchaser that the deal was closed and the papers on the way, and she would not obligate herself to hold the trade open· until she knew the land was sold. The purchaser did not accept these terms, but sent to the designated bank a contract for the sale of the land and a check for $300, which he thought was sufficient compensation for an option on the land in case he failed to take it. The vendor refused to sign the contract so sent, but insisted the procedure should be as required by her first letter. In reply the purchaser stated that, if N. wanted to close the deal according to his proposition, she should sign the contract in duplicate, keep one and return the other, collect the $300 check, and, if he failed to comply with the contract, retain the same as a forfeiture. This was refused by a letter from N.'s husband, who stated that they would call the deal off. *Held,* that there was no contract of sale.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

7. HUSBAND AND WIFE (§ 193*) — WIFE'S LAND—CONTRACT TO CONVEY.

A wife, during coverture, neither at common law nor under Rev. St. 1911, arts. 4621, 4622, prescribing the rights and powers of married women, could make an enforceable contract to convey her land, unless joined by her husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 716–718, 940; Dec. Dig. § 193.*]

8. DISCOVERY (§ 70*) — INTERROGATORIES — FAILURE TO ANSWER—EFFECT.

Where complainants did not refuse to answer certain interrogatories as certified by the notary, the court did not err in permitting complainants to testify, and in not regarding the interrogatories as confessed.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 84–86; Dec. Dig. § 70.*]

9. APPEAL AND ERROR (§ 548*)—STATEMENT OF FACTS—OMISSION—REVIEW.

In the abence of a statement of facts, an objection that the court's findings are not supported by the evidence will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2433–2440; Dec. Dig. § 548.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Suit by L. F. Nickey and wife against E. F. Connell and others. Judgment for complainants, and defendant Connell appeals. Affirmed.

W. H. Russell and Knight & Slaton, all of Hereford, for appellant. Reeder & Dooley, of Amarillo, for appellees.

HUFF, C. J.  This suit was brought by the appellees, L. F. Nickey and his wife, L. M. Nickey, against E. F. Connell, appellant, W. H. Russell, and Roy ·F. Barber, in which they sought to set aside and enjoin other proceedings under a certain default judgment rendered in the district court of Deaf Smith county in favor of the appellant, E. F. Connell, and against L. F. Nickey and L. M. Nickey, on November 25, 1912. This case was tried in the court below, without a jury. The court rendered a judgment therein, vacating ·and setting aside the default judgment, and perpetually enjoining any further proceedings thereunder. The case is in this court alone upon the findings of fact and conclusions of law filed by the trial court, and without a statement of facts. The case will be sufficiently understood from the findings of the trial court, which are as follows:

### Findings of Fact.

"First. On May 1, A. D. 1912, the defendant herein, E. F. Connell, filed his original petition in the district court of Deaf Smith county, Tex., against the plaintiffs herein, L. F. Nickey and Lizzie M. Nickey. Connell's suit was numbered 498, and styled E. F. Connell v. L. F. Nickey et ux., on the docket of this court. In said original petition E. F. Connell alleged in substance: (1) That the Nickeys owned sections of land Nos. 140–146, in block M–7, Castro county, Tex. That on or about March 2, 1912, the Nickeys made a proposition to E. F. Connell to sell him said land for $8,000, $4,000 cash, balance in vendor's lien notes of $2,000 each, due one and two years, with interest, Connell to place $300 earnest money in bank at Mansfield, La., and Nickeys would send their agent to Hereford, Tex., to close said deal. (2) That he (Connell) accepted the proposition, and in all things complied with the terms thereof, by putting up the $300 earnest money in said bank, etc. (3) That the Nickeys failed and refused to carry out their contract—breached same by refusing to convey the land and take the money and notes, etc. (4) He prayed judgment for the land in specific performance of the contract by the Nickeys, and, in the alternative, for his damages in the sum of $5,200.

"Second. On June 5, 1912, in vacation, E. F. Connell filed his first amended original petition,

wherein he alleged a written contract between himself and the Nickeys for the sale and purchase of said land, breach of said contract by the Nickeys, his consequential damages in the sum of $5,200, and prayed judgment for his damages. He also alleged in said amended petition the sale by himself of said lands to other parties for $5,200 more than he had contracted to pay therefor to the Nickeys, the loss of which profits constituted his damages.

"Third. At the date of filing said original and amended petition, respectively, the Nickeys resided in the state of Louisiana, where they have permanently resided at all times and now reside.

"Fourth. The Nickeys were each served with nonresident notice of the filing of the original petition, and had delivered to them a certified copy of said original petition attached to said notice, which said notice was served in the state of Louisiana, commanding the Nickeys to take notice of the filing of said suit, and to appear and answer same at the October, 1912, term of this court, which convened on October 28, 1912.

"Fifth. That on the 13th day of November, 1912, during term time of this court, E. F. Connell made and filed in this court his affidavit and bond for attachment in said cause No. 498, and procured a writ of attachment to be issued by the clerk of this court and delivered to the sheriff of Castro county, Tex., which said writ was dated November 13, 1912, and which was on the same day, to wit, November 13, 1912, levied by Roy Barber, sheriff of Castro county, Tex., on the two sections of land belonging to said Nickeys, and said sheriff's return on said writ of attachment was properly certified to by said sheriff and was recorded in the attachment lien records of Castro county, Tex., on November 13, 1912. No notice of the issuance of this writ of attachment, nor of the levy of same, nor of the recording of the return with the certificate of the officer thereto, was served on the Nickeys, or either of them, and neither of the Nickeys had notice or knew that their land had been attached or levied upon, or an attachment lien created thereon, until about the 4th day of February, A. D. 1913, when they received notice at their home near Mansfield, La., that their land had been seized and would be sold by virtue of an order of sale issued out of the district court of Deaf Smith county, Tex., in cause No. 498, styled E. F. Connell v. L. F. Nickey et ux.

"Sixth. On November 25, A. D. 1912, E. F. Connell took judgment by default in said cause No. 498 against L. F. Nickey for the sum of $5,044, together with all costs in that behalf expended. In said judgment the court ordered that no execution should issue thereon on account of the Nickeys being nonresidents of the state of Texas, but ordered that the attachment lien as it existed on the 13th day of November, 1912, be foreclosed, and that an order of sale issue, commanding the sale of said land, or so much thereof as may be necessary to satisfy said judgment.

"Seventh. That after said default judgment was entered, and after final adjournment of the October, 1912, term of this court an order of sale was issued by the clerk of this court on the —— day of ——, 1912, directed to the sheriff of Castro county, commanding him to seize and sell said land, or so much thereof as was necessary to satisfy said judgment. That the sheriff of Castro county levied upon said land and proceeded to advertise same for sale as directed in said order of sale, and served the Nickeys with notice thereof about the 1st of February, A. D. 1913, which was the first notice they, or either of them, had that the writ of attachment had issued and been levied on their land, and that the default judgment had been entered, and that the order of sale had been issued and levied on their land, and same was being advertised for sale.

"Eighth. On the —— day of ——, 1912, E. F. Connell procured a commission to be issued by the clerk of this court in cause No. 498 to take the answers of L. F. Nickey and Lizzie M. Nickey to ex parte interrogatories propounded to them by E. F. Connell. That said ex parte interrogatories, together with said commission and the certificate of a notary public for the state of Louisiana, were returned into this court in said cause No. 498 in due form of law in August, 1912. That said ex parte interrogatories had not been answered, but were accompanied by the certificate of ——, a notary public, in and for De Soto parish, state of Louisiana, duly authenticated by his seal of office, and in due form as required by law in such cases, certifying that L. F. Nickey and Lizzie M. Nickey had each willfully refused to answer said ex parte interrogatories propounded to them by E. F. Connell and read to them by said notary public, and upon the trial of said cause No. 498, wherein said default judgment was entered by the court, took said ex parte interrogatories as confessed against the said Nickeys.

"I find that said certificate of said notary public to the effect that each of the said Nickeys willfully failed and refused to answer said interrogatories is not true, and I also find that neither L. F. Nickey nor Lizzie M. Nickey refused to answer said interrogatories, or any of them, and that said interrogatories should not be taken as confessed.

"Ninth. The entire negotiations between E. F. Connell and L. F. Nickey and Lizzie M. Nickey for the sale of said land consisted of the following letters:

"(1) A letter dated January 22, 1912, written and signed by one J. H. Williams, to plaintiff Lizzie M. Nickey, which said letter she, the said Lizzie M. Nickey, received. In said letter written by said Williams he, the said Williams, made this statement, to wit: 'I have a possible chance of selling the place [meaning said two sections of land] for $8,000.00 cash net to you. Let me know at once if you can take it.'

"(2) A letter dated January 26, 1912, addressed to J. H. Williams, and in reply to his letter of date January 22d, aforesaid, signed by plaintiff Lizzie M. Nickey, properly addressed to J. H. Williams, Hereford, Tex., properly sealed, stamped, and posted, which said letter said Williams received. In said letter plaintiff Lizzie M. Nickey stated that she would accept $8,000 cash net to her for said two sections of land, provided said Williams would have the $8,000 at the People's Bank in Mansfield, La., by February 5, 1912, together with deed for her to sign, with instructions to said bank to turn over the $8,000 to her when the deed was acknowledged by her, and the said Lizzie M. Nickey made the positive statement in her letter, as follows: 'I will not be under obligation to accept this after February 5, 1912. Wire me on receipt of this if you are sending papers.'

"(3) A letter dated February 28, 1912, signed by E. F. Connell, defendant herein, written to plaintiff Lizzie M. Nickey, which letter was received by plaintiff Lizzie M. Nickey, and is as follows, to wit:

"'Hereford, Texas, February 26, 1912.

"'Mrs. Lizzie M. Nickey, Mansfield, La.—Dear Madam: Your letter to Mr. J. H. Williams has been handed to me by Mrs. Williams for reply, as Mr. Williams was out of town looking after his cattle and has been for two weeks. The party Mr. Williams was on a deal with offered him seven thousand five hundred dollars for your two sections; would you be willing to carry back on land one and two years six per cent. four thousand of this money? If you would, it would help the sale of the place, as eight thousand dollars is hard to raise. If you can do this, I believe Mr. Wil-

liams can get his deal through and get you eight thousand dollars net to you. If you will do this, I will help him make the deal, and your four thousand dollars would be as good as you would have a lien on the place. Your land ought to sell for this money as you have a nice place. Hoping to hear from you real soon, I am, Yours truly, E. F. Connell.'

"(4) A letter dated March 2, 1912, written and signed by plaintiff Lizzie M. Nickey to E. F. Connell, the defendant herein, and said E. F. Connell received the same in due course of mail. Said letter is as follows, to wit:

"'R. R. No. 1, Mansfield, La.,
"'March 2, 1912.

"'Mr. E. F. Connell, Hereford, Texas—Dear Sir: I am in receipt of yours under date of Feby. 28th, regarding the deal of Mr. Williams had up for my two sections. I note that you say you can obtain eight thousand dollars net to me for said two sections, provided I am willing to carry back on place one and two years six per cent. four thousand of this money. In reply will say I had as soon do that as to have the whole eight thousand in cash now, and I realize that it is hard to raise that amount sometimes. If you can get that sort of a deal through, four thousand down cash and balance back on place one and two years six per cent. secured by first deed of trust, and will send your deed filled out, together with deed of trust signed, also notes signed by purchaser and wife, deed of trust also to be signed by wife, together with draft for four thousand cash, I will examine said papers, and, if same are regular and comply with the laws of your state, I will sign and return. If the papers do not comply with your laws, I will instruct bank to return the same to you or to party sending them, all papers to be sent to People's Bank, Mansfield, La. If it would be preferred, I can have my agent come out there and close the deal, bringing abstract with him; but I will not do this until after as much as three hundred dollars have been deposited in the People's Bank at Mansfield, as earnest money, as a surety that the deal will be closed. However, there is no need of his coming out there that I can see; the deal can be closed just as well through the bank. I presume you know there is still due the state on these two sections ninety-seven and one-half cents per acre, which incumbrance I should have paid just as soon as I bought the place; but the state demanded the interest for the full time. If the deal is made, the parties buying land must assume that. The eight thousand dollars in money and notes secured by place is to be net to me as the place now stands. The taxes for 1911 are paid, and I have abstract showing clean title. Trusting that this letter will give you the desired information, and that we may close a deal satisfactory to all parties concerned, I am, Very truly yours, Lizzie M. Nickey.

"'P. S. I am not to be bound by this letter in any way until after I hear from you that the deal is closed, and the papers are on the way; then I will wait a sufficient time for them to get here, but I am not going to obligate myself to hold the place until after I know a deal is closed. If you have any important mail to send, please register it as our mail comes very uncertain. Lizzie M. Nickey.'

"(5) A letter dated April 19, 1912, from Lizzie M. Nickey to Mr. E. F. Connell, which was as follows:

"'R. R. No. 1, Mansfield, La.,
"'April 19, 1912.

"'Mr. E. F. Connell, Hereford, Texas—Dear Sir: I have this day received the papers from the People's Bank of Mansfield, which were sent by you to the bank. I am forwarding First State Bank & Trust Co. of Hereford, Tex-

as, the abstract of land, with instructions to them to let you have same for five days to examine, and, if title is not satisfactory to you, the abstract is to be returned through the bank to me. If satisfactory, you are to return to bank to keep until deal is closed; then I will notify bank to turn back to you. If the title is satisfactory, you are to wire me to that effect and send bank draft for thirty-seven hundred dollars and the value of the three hundred dollar check to People's Bank, Mansfield, La., together with your two vendor's notes of two thousand dollars each, six per cent. interest from date until paid; said two notes being secured by first deed of trust on land, Emmett C. Nickey, of Poplar Bluff, Mo., Trustee, send all papers to the bank as I wish to see them before accepting. As you have been so long answering, I have taken the deal up with another man; he is to make me an offer within the next few days, and I shall accept the first best offer of the man who puts himself in position to stay, as I do not know that you will go through with the deal. There is no need to sign any contract; if you approve of the title to land, send all papers here with the four thousand dollars, and, if the papers are regular, we will close the deal up without any contract, but I am not going to be bound until I know you expect to go through with the deal. As I have had several checks like the one you sent turned down, I do not consider a check money until I know the man who signs the check. As I said before, we need no contract. I do not want your money without you get my land, and I do want the money if you get the land. If you send a telegram, send in care of post office, and I will get it at ten o'clock the next day. If you write, please register your letters. Trusting that this will be satisfactory to you, I am, Yours very truly, Lizzie M. Nickey.'

"(6) A letter dated April 22, 1912, from E. F. Connell to Mrs. Lizzie M. Nickey, which is as follows:

"'Hereford, Texas, April 22, 1912.

"'Mrs. Lizzie M. Nickey, Mansfield, La.— Dear Mrs. Nickey: Your favor received this morning. I went to the bank and looked over the abstract, which I think is all right, though your way of doing business does not suit me. If you want to close this deal with me according to my proposition made to your bank, and sign the contract in duplicate, keep one and send me the other. Collect the three hundred dollar check, and, if I fail to comply with the terms of your contract, you will have the three hundred dollars, which ought to be sufficient pay for a sixty-day contract. If you doubt the check being good, have your bank wire this bank at my expense. I know who it is here butting in on my deal. It is J. A. Fox; if you prefer to entertain their deal in preference to mine, all right. I don't propose to send four thousand dollars to your credit, not knowing whether you intend to accept the deal or not. If you want to let me have the land, sign the contract and receive the three hundred dollars, or instruct the bank that the deal is off, and they will return me my papers. There is only one way to do business, and that is in a business way. I have complied with your former letters in every respect; you stated in your former letter that, if I would have three hundred dollars placed in your bank as a guarantee that the deal would be closed, you would make out the papers and deposit in bank until deal was closed. Very truly yours, E. F. Connell.'

"(7) A letter from L. F. Nickey to Mr. E. F. Connell, dated April 26, 1912, which is as follows:

"'R. R. No. 1, Mansfield, La.,
"'April 26, 1912.

"'Mr. E. F. Connell, Hereford, Texas—Dear Sir: I have just returned from a trip through

your country down to Pecos City and find things promising out there this spring. The Miss. floods are a good thing for the Panhandle. I find on my return your letters to my wife regarding her two sections, 140, 146. Replying to your last one, beg to say that, if you will look over the letter of March 2d which my wife wrote you, you will find that you are very much mistaken; there was nothing said about contracts at all; the business was to be closed through the bank. However, as it will take you sixty days to get four thousand dollars together, we will call the deal off; no harm done. Price of place henceforth twelve fifty per acre. If you have any propositions later on, send them in. You are further mistaken in your letter; no one has been butting in on your deal at all. The offer my wife had reference to was from another section of the country entirely, and not from Hereford, so therefore the party knew nothing about your offer. Trusting that the above is satisfactory to you, Very truly yours, L. F. Nickey.

" 'P. S. I will instruct the People's Bank to return your check. I have the deed and contracts as they are blank and your check to be returned. I do not see that they will be of value to any one. L. F. N.'

"L. F. Nickey testified that the foregoing letters constituted the entire negotiations beween himself and his wife, Lizzie M. Nickey, with E. F. Connell relative to the sale and purchase of said land, and that Connell never accepted nor complied with nor offered to comply with any proposition made him, and that they never did owe E. F. Connell anything.

"Miss Flora Nickey, daughter of L. F. Nickey and Lizzie M. Nickey, testified that she wrote all letters for her parents, received, opened, and read to them all letters received by them, and had done so for the last three years on account of her parents' old age, and that the foregoing letters were all that passed between her parents and Mr. Connell relative to the sale and purchase of said land, and that Connell never accepted nor complied with nor offered to comply with any proposition made him, and that they never did owe E. F. Connell anything.

"E. F. Connell testified that the foregoing letters constitute the entire negotiations between himself and the Nickeys for the sale and purchase of said land, and that said letters constituted the contract and the only contract he had with the Nickeys, if any at all, for the purchase of said land, and that he never did send to the People's Bank of Mansfield, La., the money, notes, deeds, and trust deed demanded by the Nickeys, nor did he ever offer to do so.

"Tenth. When L. F. Nickey and Lizzie M. Nickey were served with nonresident notice and copy of E. F. Connell's original petition, in cause No. 498, in June, 1912, they immediately forwarded said notice and copies of said petition to Messrs. Gibbany & Black, attorneys at law, in Roswell, N. M., and employed said law firm to represent them in said lawsuit.

"Messrs. Gibbany & Black, who had been representing the Nickeys as their attorneys in Missouri and in New Mexico for seven years, accepted employment by the Nickeys in said cause No. 498, and contracted and agreed to give the matter their very best attention, and immediately wrote the Nickeys they would accept employment in said cause and would give the matter their best attention.

"On October 4, 1912, the Nickeys wrote their attorneys, Gibbany & Black, at Roswell, calling their attention to the case, and that court would convene at Hereford, Tex., on October 26, 1912, and requested their attorneys to keep them posted by wire at Nickey's expense as to when Mr. Nickey and the original correspondence between the Nickeys and E. F. Connell would be needed at Hereford, Tex., on the trial of said cause, and stated that Mr. Nickey would be

present with said letters when needed. On October 13, 1912, Messrs. Gibbany & Black answered Nickey's letter of October 4th, stating that Mr. Nickey and the letters would not be needed as they had the case about settled, and in any event it would be dismissed on demurrer, and again assured the Nickeys that the case would have their best attention.

"Mr. Gibbany, of said law firm, was in Hereford, Tex., the 25th or 26th of October, 1912, and while there wrote the Nickeys a letter stating that he had settled the lawsuit with E. F. Connell for the sum of $500, and that the suit would be dismissed, that he had $1,000 in the First State Bank & Trust Company assigned to him (Mr. Gibbany), and that, if the sale of the land went through, $500 of the proceeds was to be paid to Mr. Connell, and, if the sale did not go through, he was to pay $500 out of the forfeit money to Mr. Connell, and the suit had been dismissed. At the time this letter was written there was in the First State Bank & Trust Company at Hereford, Tex., $1,000 in money, with a written contract signed by one Mr. Grant for the purchase by him of the Nickey lands. Said sale had been negotiated by and through the Snyder-Evants Realty Company of Hereford, Tex., and said contract provided for the forfeit by Mr. Grant to said realty company of the $1,000 should Grant breach his contract to purchase said land, and said real estate company had assigned said forfeit money to Mr. Gibbany as attorney for the Nickeys.

"Mr. Gibbany at that time had in his possession the deed executed by the Nickeys conveying the lands to Mr. Grant, and had full authority from the Nickeys to represent them in handling said land deal in all its details.

"In said letter Mr. Gibbany sent Mr. Nickey a bill for his fee and expenses in the Connell suit amounting to $219, which Mr. Nickey promptly remitted to Mr. Gibbany by check.

"The Nickeys had profound confidence in their attorneys and believe to be true Mr. Gibbany's statement in said letter that Connell's suit against them had been settled and dismissed. They paid their attorney's fee and his expenses, and dismissed said suit from their minds, and did not know said suit had not been dismissed until about the 4th day of February, 1913, when they were served with notice that their land had been levied on and would be sold to satisfy said judgment.

"If the Nickeys had not been advised by their attorneys that Connell's suit was settled and dismissed, they would have attended this court in person at the October term, 1912, with all the correspondence between themselves and E. F. Connell, and would have presented to the court in the proper way their defense to Connell's suit.

"E. F. Connell did contract and agree with the Snyder-Evants Real Estate Company to dismiss his lawsuit against the Nickeys for $500, and on October 25, 1912, he executed a full release of his entire claim and suit against the Nickeys and placed same in the First State Bank & Trust Company at Hereford, Tex., which release remained in said bank and was in said bank on November 25, 1912, when the default judgment was entered in the original suit, and the Grant land deal had not been closed but was open and pending on November 25, 1912, when the default judgment was entered. E. F. Connell testified on the trial of this case that, when he executed and placed said release in said bank on October 25, 1912, he thought the $500 was to be paid on that day, and the $500 had never been paid to him.

"I find that E. F. Connell did not contract and agree with Ed. S. Gibbany, attorney for L. F. Nickey and Lizzie M. Nickey, in cause No. 498, to dismiss said suit, and Ed. S. Gibbany did not contract and agree with E. F. Connell to pay said Connell $500 out of the proceeds of the sale of Nickey's land to the

Grants, or out of the $1,000 forfeit money then in the bank if the Grants failed to close the deal, in full settlement of Connell's suit and claim against the Nickeys, and that the statement of Ed. S. Gibbany in his letter to his clients received by them about November 1, 1912, that he had settled the lawsuit with Mr. Connell for $500, to be paid out of the proceeds of the sale of the land, or out of the forfeit money if the sale fell through, was not true.

"At the time Ed. S. Gibbany wrote this letter to his clients, he knew that the agreement between E. F. Connell and the Snyder-Evants Land Company to the effect that Connell would dismiss his suit on the payment of $500 to him by said land company out of their commissions on said land sale had been executed by Connell, and that said agreement was then in the bank at Hereford, Tex.

"Eleventh. Mr. Ed. S. Gibbany, attorney for the Nickeys in the original suit, was in Hereford, Tex., on October 25, 1912, and on October 26, 1912, he and W. R. Evants and one Mr. Snyder, of the Snyder-Evants Land Company, left Hereford, Tex., and went to Casey, Ill., to close the land deal with H. M. and O. P. Grant, who resided at Casey, Ill., and had contracted in writing to purchase the two sections of land from L. F. and Lizzie M. Nickey, through the Snyder-Evants Real Estate Company at Hereford, Tex.

"Mr. Gibbany returned to Roswell, N. M., by the 9th day of November, 1912; but neither he nor Mr. Black, nor any member of the firm of Gibbany & Black, returned to Hereford, Tex., during the October, 1912, term of this court, and did not file any answer in the original suit for the Nickeys, and did not learn that the default judgment foreclosing the attachment lien on said land to satisfy an adjudged indebtedness of $5,040 had been entered until December 9, 1912, after the October term of this court had adjourned for the term on November 25, 1912, and Messrs. Gibbany & Black, attorneys for L. F. and Lizzie M. Nickey in the original suit, did not notify their clients at any time that the attachment had been issued and levied on their land, and that judgment had been entered by default against their clients foreclosing the attachment lien to satisfy the payment of their adjudged liability of $5,040 to E. F. Connell."

### Conclusions of Law.

"First. I find that E. F. Connell had not entered into any contract with L. F. Nickey and Lizzie M. Nickey, nor either of them, to purchase their land, and that L. F. Nickey and Lizzie M. Nickey, nor either of them, were ever under any contractual obligations and never owed any duty to E. F. Connell to convey said land to him, and that L. F. Nickey and Lizzie M. Nickey, nor either of them, never at any time owed E. F. Connell any sum of money whatsoever, and that therefore L. F. Nickey and Lizzie M. Nickey had a meritorious defense to E. F. Connell's cause of action in cause No. 498, on which judgment by default was taken and entered on November 25, 1912.

"Second. I find that L. F. Nickey and Lizzie M. Nickey each believed the statement of their attorney, Mr. Gibbany, contained in the letter written to them by their attorney from Hereford, Tex., which they received about November 1, 1912, that E. F. Connell's suit against them had been settled and dismissed, and that they acted on said statement and advice from their said attorney as being true, and that said statement and advice from their said attorney, and their unqualified belief that said statement and advice was true, was the direct and proximate cause of their failure to appear and defend the original suit of E. F. Connell against them, and that they were not guilty of any negligence in believing to be true and acting on the advice given them by their said attorney

as they did, nor in failing to appear in person and look after their interest in the original suit.

"Third. I find that, as the plaintiffs in this case, L. F. Nickey and Lizzie M. Nickey, had a complete and meritorious defense to E. F. Connell's original suit, and as the default judgment in the original suit did not result from culpable negligence on the part of L. F. Nickey and Lizzie M. Nickey, nor either of them, it would be inequitable to allow the default judgment of November 25, 1912, to stand and permit the property of plaintiffs to be sold under the order of sale awarded in said judgment.

"D. B. Hill, District Judge."

[1] The appellees first object to our considering appellant's assignments of error, on the ground that the findings of fact and conclusions of law and the judgment of the trial court were not excepted to. We find that in the order overruling the motion for new trial that appellant excepted to the action of the court, gave notice of appeal, etc. As we understand an exception embodied in the order overruling the motion will be considered sufficient as an exception to the judgment of the court. Temple v. Watkins Land Co., 81 S. W. 1188; Thompson v. State, 23 Tex. Civ. App. 370, 56 S. W. 603. We will therefore consider the assignments of appellant.

[2] The appellant, under the first assignment, makes the following proposition:

"The act or omission of the attorney is the act or omission of the client, and no negligence will be excusable in the former which would not be excusable in the latter."

As a proposition of law, appellant doubtless is correct, and if this case rested alone on the negligence of the attorney of appellees, his omission to perform correctly his duty, or if his negligence or carelessness was with reference to the matters with which he was charged, the appellant would be justified in insisting on the rule invoked by him. The attorney for appellees, however, in this case, represented that the case was settled and dismissed, or would be. This was a statement of a fact which the court finds was not true. It therefore was a misrepresentation, either made upon a mistake of fact, or willfully made. In either event the effect was the same and disarmed the appellees, leading them to believe their case was settled and that there was no necessity for their presence at the court with the correspondence. Some three days previous to the time court convened the attorney of appellee was in the town of Hereford, the place where the court was held, and this cause was pending, and wrote appellees the case was settled and would be dismissed; further requesting that appellees remit their fees, together with his expenses. This appellees promptly did. It appears for some reason unexplained that the attorneys for appellees did not attend that term of court. The attorney, in writing to appellees that the case was settled, when it was not, whether willfully done or by a mistake, operated as a fraud in law upon the appellees, and such representations, having caused appellees to act thereon to their in-

jury, and caused them to dismiss from their minds the case, we think, was sufficient ground for a court of equity to interpose and prevent the execution of a judgment so wrongfully obtained. Lemaster v. Dalhart Real Estate Agency, 56 Tex. Civ. App. 302, 121 S. W. 185; Id., 132 S. W. 860; Lumpkin v. Williams, 1 Tex. Civ. App. 214, 21 S. W. 967; Jordan v. Brown, 94 S. W. 398; Rodriguez v. Espinosa, 25 S. W. 669; Searles v. Christensen, 5 S. D. 650, 60 N. W. 29; Barton v. Williams, 69 N. J. Law,· 603, 55 Atl. 105. It is urged by appellant that the appellees were themselves negligent. They had employed attorneys to represent them in the suit, and on the 4th day of October wrote said attorneys that the court would convene at Hereford October 28th, and that they would be present with all the correspondence when required, and in that letter they requested the attorneys to wire at their expense when to come. On the 13th day of October the attorneys wrote that they had the case about settled, and that appellees and the letters would not be needed. On October 25th or 26th the attorneys wrote to appellees that the case had been settled and would be dismissed. It is urged that this letter did not reach the Nickeys until November 1st following, and after appearance day, and therefore they did not rely on it and were negligent in not being present on appearance day. The record is ample that it was not necessary for them to be present on appearance day. In the first place, they had an attorney to represent them, who had informed them the case was about settled, and that the letters and themselves were not required to be present. Further, appellant could not have taken judgment on appearance day. The appellees were nonresidents of the state, and no personal judgment could have been taken at that time. On the 13th day of November, 1912, during the October term of that court, appellant sued out an attachment, making the affidavit and bond required by law, and had the land in question levied on by writ of attachment, and then, for the first time, made it a suit in rem, and thereafter, on the 25th day of November, 1912, the last day of that court, took a judgment by default.

[3] To say the least of it, the appellant was in very great hurry after the court obtained jurisdiction to obtain judgment. Ordinarily, under the procedure, in this state, judgment would not be rendered until jurisdiction had been had and service procured the required length of time before the court convened. It occurs to us that between appellees' attorneys and their adversary they had but little opportunity to present their defense had they been ever so diligent. Fraud, whether in law or fact, when committed against a party, inducing him to rely thereon, excuses him from diligence. Law and equity are both averse to giving any one the fruits of fraud, wheth-er he committed it or not. In this case appellees' attorneys misrepresented the facts as to settlement and dismissal. Appellant, during that term of court, instituted a suit in rem against appellees' land, and at the same term, just before adjournment, without notice to appellees, foreclosed his attachment lien. We see no just reason why the judgment should stand; in fact, right demands that these appellees have their day in court, and, if they have a legal defense, that they be heard thereon. The record in this case suggests that the default judgment taken against the appellees is void. Without holding at this time that it is so, we simply suggest the question. The district court, in which the judgment was taken, clearly had no jurisdiction over the Nickeys on appearance day. The action then was one in personam; November 13th it was changed to one in rem. No notice was given of such change to appellees, and default was then taken on the last day of court, November 25th. One question is: Was this a new cause of action in the sense that notice should have been given thereon? Article 267, R. S. 1911, makes the levy of an attachment a lien, and the right to foreclose the lien is given by the statute.

[4] A suit was therefore instituted November 13th to foreclose the lien on the land. Would such foreclosure, without notice thereof, be due process of law? The seizure of the property in an in rem proceeding places it within the jurisdiction of the court; but due process requires that its owner shall have an opportunity to be heard upon the claim to which it is sought to be subjected. "To that end, some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which appearance must be made, is essential." Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Freeman v. Alderson, 119 U. S. 185, 7 Sup. Ct. 165, 30 L. Ed. 372. "If it appears from the inspection of the record of a court of general jurisdiction that the defendant, against whom a personal decree or judgment is rendered, was, at the time of the alleged seizure, without the territorial limits of the court, and thus beyond the reach of its process, and that he never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden of establishing the jurisdiction is cast upon the party who invokes the benefit or protection of the judgment or decree." Stewart v. Anderson, 70 Tex. 588, 8 S. W. 295; Galpin v. Page, 18 Wall. 364, 21 L. Ed. 959. "While seizure may lead to notice that a demand is made, this is not the essential purpose that makes it necessary in attachments and like cases. That purpose is to confer upon the court the power to render a judgment whereby the thing seized may be subjected to the payment * * * of the sum due him. In attach-

ment cases this right is acquired through the lien given by the levy of a writ of attachment." Stewart v. Anderson, supra.

[5] A notice was served in the original suit on appellees. At that time the court had no jurisdiction or power to render a judgment. Was the notice then issued by it of any validity? It was the levy of the attachment that gave the court jurisdiction or power to render a judgment. Did this then vitalize its void or invalid notice theretofore issued? If the appellees were not required to answer on the notice given when given, were they required to answer after the levy of the attachment, without further notice thereof? From expressions used in various decisions, the question is somewhat doubtful, and we do not feel that we should at this time announce the rule in a case of this kind, at least without the aid of a brief on the question. If further notice was required after the change of a personal action to one in rem, then we would have no hesitancy in holding the judgment void because of such failure. On this question all decisions appear to agree; that is, if notice was required after the change, and none was given, a default judgment would be void. In considering this case, the record on the questions above suggested, we think, may properly be looked to on the question of the negligence of appellees. We think the manner of taking the judgment after the change, without notice, refutes the imputation of negligence on the part of appellees. The first assignment and others relating to the questions above discussed are overruled.

[6] The second and third assignments are to the effect that the court erred in holding that appellant did not have an enforceable contract with the appellees for the purchase of the land, and in holding that appellees had a meritorious defense. If the parties reached an agreement for the sale and purchase of the land, and agreed upon the terms and price of the land, together with the necessary details for making the sale and transfer, and the same was in writing, the appellant's propositions would be correct. Mrs. Nickey offered her land for $8,000, $4,000 cash, and the balance in two equal payments of $2,000, due in one and two years. She required the deferred payments to be secured by vendor's lien and deeds of trust signed by the purchaser and his wife. The papers, together with the cash payment, were to be deposited in the bank of appellees' home town, and then she would sign a deed to the land. In her first letter she expressly stated she was not bound by the letter until after she heard from Connell that the deal was closed and the papers on the way, and that she was not going to obligate herself to hold the trade open until she knew the land was sold. It seems Connell did not accept this contract in terms, but sent to the designated bank a contract instead, and, in the place of the money, deed of trust and notes; the contract

giving him 60 days. He also sent a check for $300, which he thought was sufficient compensation for the time in case he failed to take the land. Mrs. Nickey refused to sign the contract so sent by Connell, but required him to send the cash payment to the bank, together with his vendor's lien notes and the deed of trust, and she expressly notified him that there was no necessity for the contract, and that, if the title to the land was satisfactory to Connell, he could sign the papers and send the money, and the trade would be closed. Connell, in answer thereto, wrote:

"If you want to close this deal according to my proposition made to your bank and sign the contract in duplicate, keep one and send me the other. Collect the three hundred dollar check, and, if I fail to comply with the terms of the contract, you will have the three hundred dollars, which ought to be sufficient to pay for a sixty-day contract. * * * If you want to let me have the land, sign the contract and receive the three hundred dollars, or instruct the bank that the deal is off, and they will return me my papers."

Afterwards L. F. Nickey, the husband of Mrs. Nickey, returned home, and, finding the letter of Connell, he himself answered it, calling Connell's attention to Mrs. Nickey's letter, stating in substance that Connell would find no contract was called for by his wife's letters, but that the business was to be closed through the bank:

"However, as it will take you sixty days to get four thousand dollars together, we will call the deal off. No harm done."

There can be no question that Connell did not accept Mrs. Nickey's terms. She clearly stated she would not wait 30 days for the consideration of the deal, but that it must be closed as soon as the papers could be gotten to the bank. Connell did not accept this proposition, but sent a contract embracing his terms, giving him 60 days. His letter clearly evidences that he recognized that no contract had been made. He therein stated that, in order to close the deal according to his "proposition," not Mrs. Nickey's, the contract must be signed, and, if not signed, the "deal is off." The appellees did notify the bank as instructed by Connell. The letters show Mrs. Nickey made one proposition, and, while Connell claims to have accepted it, he in fact did not, but made another, giving himself 60 days to take the land and pay for it, and, if his proposition was not accepted, "the deal is off." That the parties did not reach an agreement, we think is beyond cavil. If no contract was made, Connell had no cause of action and no right to damages. We think the court correctly so held. In order to turn an offer into a binding contract, the acceptance must be absolute and identical with the terms of the offer. "If the acceptance varies from the offer, it is in effect a rejection and a counter proposal, and accordingly the offer thereupon lapses as in case of express rejection." This proposition of law is recognized by all the text-writers. Hammon on Contracts, § 71; Simkins on Contracts (3d Ed.)

pp. 3, 23; 1 Page on Contracts, §§ 44–46; Elliott on Contracts, §§ 36, 38, 39.

[7] Under R. S. 1911, arts. 4621 and 4622, Mrs. Nickey, during coverture, could not make a contract to convey land, unless joined by her husband, and had no such right at common law as we understand it, and could not convey the land. 21 Cyc. 1320. Nickey, the husband, did not approve the contract, but on return home returned all the papers to Connell, and stated the deal was off. We believe the court correctly found that appellant never had any cause of action, and that the appellees had a meritorious defense.

[8] The seventh and eighth assignments assert that the court erred in holding that appellees had a meritorious defense, because it is averred that the ex parte interrogatories propounded to the appellees were not answered, and the notary public to whom they were forwarded certified that the appellees had willfully refused to answer them, and that there was no motion by appellees to quash the deposition at the court at which they were filed, on the ground that the certificate was false. The trial court finds that neither of the appellees refused to answer said interrogatories, or any of them, and that said interrogatories should not be taken as confessed. The Supreme Court of this state has held that, where it is shown the party did not refuse to answer the interrogatory, or if he declined to answer under a mistake as to his rights, and not contumaciously, the interrogatories should not be taken as confessed. The trial court having found appellees did not refuse to answer them, we think there was no error in permitting the appellees to testify, and in disregarding the interrogatories as confessed, if they were so disregarded. Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Robertson v. Melasky, 84 Tex. 559, 19 S. W. 776; Woford v. Farmer, 90 Tex. 651, 40 S. W. 788.

It is urged, as no motion was made to suppress the return of the interrogatories and the certificate, that it was too late to attack the certificate in this proceeding. We think the reason which excuses appellees from answering in the former case in the first instance will excuse the filing of the motion to suppress the depositions. The petition in this case expressly attacks the truthfulness of the notary's certificate, and alleges the facts surrounding the offer to take the depositions. The trial court heard the evidence and found the interrogatories should not be considered as confessed. In the absence of a statement of facts, we cannot say he was not justified in so finding.

In addition to the above, we cannot tell whether, if the interrogatories are to be taken as confessed, they would amount to a confession that appellant had a cause of action, and that the appellees had no valid defense thereto. In so far as this record goes, the failure to consider the interrogatories is harmless and immaterial.

The ninth and tenth assignments are overruled. The matters here complained of are addressed to the discretion of the trial court, and we find in the record no evidence that that discretion was abused. We believe it to be unnecessary further to discuss these assignments.

The twelfth and thirteenth assignments complain at the action of the court in not filing his findings of fact on ten specific grounds set out in bill of exceptions No. 1. We have carefully gone over this bill, and we find no error in the court's failure to find as there requested. We think the court's statement of facts as a qualification to the bill amply justified him in not finding and filing on the issues therein requested. We might state the court did find on most of the issues presented, but not as appellant claims the facts warranted.

[9] In the absence of a statement of facts, we are unable to state that the court's findings are not supported by the evidence. These assignments will therefore be overruled.

The fourteenth and fifteenth assignments have been sufficiently noticed heretofore in other portions of this opinion, and will be overruled.

We find no reversible error, and the judgment will be affirmed.